Estate of Penney: Pugh and another, Respondents, vs. Fowlie and others, Appellants.   [Four cases.]

*May 26—September 14, 1937.*

For the appellants there was a brief by *Eberlein & McCarthy* of Shawano, attorneys for John Fowlie and L. S. Peterson, and *Goggins, Brazeau & Graves* of Wisconsin Rapids, attorneys for John F. Jardine and Ralph E. High, and oral argument by *R. B. Graves*.

For the respondents there were briefs by *McGovern, Curtis & Devos* of Milwaukee, and oral argument by *Francis E. McGovern*.

The following opinion was filed June 21, 1937:

WICKHEM, J.   The petition shows that deceased died testate January 27, 1922, at Waupaca; that petitioners are two of the beneficiaries named in the will; that the last will and testament named L. S. Peterson and John Fowlie as executors; that the will was duly admitted to probate and letters testamentary issued to the named executors on January 31, 1922; that the executors duly qualified and acted as executors until August 17, 1926, when they resigned and filed their final account for the period of their administra-

tion; that on August 17, 1926, John F. Jardine was appointed administrator with the will annexed of said estate and thereafter qualified and acted until October 1, 1930, on which date he resigned, whereupon Ralph E. High was appointed administrator with the will annexed, duly qualified and acted until November 10, 1931, when he resigned, and thereupon on November 17, 1931, S. W. Johnson was appointed as administrator with the will annexed, qualified, and has since been the duly appointed, acting, and qualified administrator of said estate. All of the documents, files, papers, and proceedings in the matter of the estate are referred to by the petition and expressly incorporated. The petition proceeds to set out the pertinent paragraphs of the will, which need not be here considered in detail further than to say that the will directs the executors to sell at best advantage all the items of the estate and to establish a trust fund with such sums as are in excess of the requirements for expenses of the estate. There follow directions concerning the duration, and beneficiaries, of the trust fund. The petition alleges that the real estate of decedent was appraised at $107,825 and personal property valued at $105,763.22, making in all a total of $213,588.22; that the homestead devised in the will to the widow of deceased was appraised at $6,500; the summer cottage devised to Rose Penney Pugh at $3,000; the post-office building in the city of Waupaca, devised to Mary Jane Penney, at the sum of $7,000, making a total appraised value of property specifically devised in the sum of $16,500. It is alleged that by paragraph 6 of the will it was the duty of the executors immediately to sell at best advantage all of the estate except the three parcels specifically devised and to establish a trust fund in accordance with the requirements of the will; that upon the appointment of the executors, Peterson and Fowlie, they failed or neglected to administer the estate as directed in the will and entered upon an utterly different plan of administration, and

purported to manage the estate as though it constituted a going concern; that they did not proceed to sell the items of real estate or to establish the trust fund and completely ignored the directions of the will and the intention of the testator; that the real estate consisted of a motion-picture theater that had cost the testator $100,000, and been operated by him; the building and premises on which a restaurant was conducted and had been operated by testator; a store located on said premises; four farms in Waupaca county that had been conducted by the testator; and some small parcels of real estate of minor value; that during the period from the testator's death to the year 1932, the market for real and personal estate in Waupaca county was more favorable for the sales of such property than it had been at any time theretofore; that in the face of this, the executors neglected to sell the real estate, except one farm and two or three parcels of minor value; that instead they attempted indefinitely to manage the property, and that as a result of their operations they wasted and lost large sums of money each year except one; that according to their own reports in the year 1922, they sustained a net loss of $1,104.36; in 1923, $4,432; 1924, $5,332.63; 1926, $4,510.87; 1925, they reported a gain of $2,868.94; that the successors to the said executors, Jardine, High, and Johnson, continued to disregard the intentions of the testator and the provisions of the will and to manage the property instead of selling it, with the result that in 1927 the net loss was $1,486.86; 1928, $1,462.34; 1929, $6,287.93; 1930, up to September 13, $8,700.28; September 13, 1930, to October, 1931, $3,873.45, making a total loss of $35,032.04; that since then there were similar losses as reported by successor administrators for each year; that as a result of waste and mismanagement, the estate has little or no value, and the petitioners have been deprived largely of their rights as beneficiaries under the will; that the executors charged and were paid large sums in com-

pensation for their management of the property as and for extraordinary services; that such services were of no value to the estate but greatly harmed it; the same allegation is made with reference to the successor administrators, and the demand is made that such money be returned to the estate. It is further alleged that the executors, Peterson and Fowlie, in place of converting the real estate into money, put a mortgage of $40,000 on all of the real estate; that they used this money in operating the estate at a loss; that the documents and papers are in such condition that it is difficult, without the expenditure of more time than petitioners have heretofore had, to determine all of the illegalities, void acts, and acts of waste by the executors and administrators; that the executors and administrators should be cited to appear and be examined at length regarding their various transactions. The petition concludes, as heretofore indicated, with demand for the citation of the executors and administrators.

Thereafter, the citation issued, and there followed the refusal of the executors and administrators to answer questions and the adjudication of contempt.

The record discloses the following orders material to contentions made upon this appeal: An order dated August 17, 1926, which appears inadvertently not to have been signed by the judge, recites the appearance in person of Fowlie and Peterson, as well as Rose Penney Pugh and Etta Penney Townsend, among others, and the agreement of the parties as to the amount of the executors' fees. It was therein ordered that the resignation of Fowlie and Peterson be accepted, and their final account approved and allowed; that the executors pay the balance of the money in their hands to the administrator to be appointed; and upon filing satisfactory evidence of such payment, that they be released and discharged from all further liability upon said estate, and their bonds as such executors canceled.

Under date of August 18, 1926, an order was signed by the county judge reciting that vouchers showing compliance with the order of the 17th having been filed, "It is ordered, that L. S. Peterson and John Fowlie, as executors of said estate, be and they hereby are discharged, their bond released and the order made absolute." There is an order signed by the county judge dated October 1, 1930, reciting the appearance of all the interested parties, including the petitioners with reference to the resignation of John F. Jardine as administrator *de bonis non* with will annexed and the filing of his final account. The order appoints Ralph E. High as administrator, and directs the discharge of Jardine upon filing the usual receipt with the court. Receipts were filed by High after his qualification showing receipt by him of the property referred to in the order of October 1st. An order was made October 28, 1931, allowing High's account, accepting his resignation, and ordering that he "be released and discharged from all further liability upon the said estate and his bond" canceled upon filing receipts from his successor, followed by an order dated November 17, 1931, reciting that, vouchers having been filed, it is ordered that he be discharged, his bond released, and the final judgment made absolute.

The question upon this appeal is whether, the county court having approved the accounts of Peterson, Fowlie, Jardine, and High, and having made final orders discharging them from liability to the estate and releasing their bondsmen, they may now be cited to appear before the court upon a petition charging them with maladministration of the estate, the estate still being in process of administration. The claims of the petitioners are: (1) That on the face of the record, which is made a part of the petition, as well as by the allegations of the petition itself, there has been a gross maladministration of the estate and a total disregard of the

directions of the will for the reason that the executors and administrators conducted the entire estate as a going concern in complete disregard of testator's directions to sell and to set up a trust fund for the benefit of those named in the will; (2) that no order authorizing such conduct was within the jurisdiction of the probate court; (3) that no order approving such administration was within the jurisdiction of the court. The conclusion is that the foregoing orders releasing the executors and administrators are wholly void.

Reliance is had upon the case of *Will of Rice,* 150 Wis. 401, 440, 441, 136 N. W. 956, 137 N. W. 778. In that case the will of the testator had been admitted to probate in the county court after formal objections were made to the competency of the testator. An appeal was taken to the circuit court, and pending a hearing upon that appeal, the parties devised a scheme of distribution which did not conform to the provisions of the will. The court entered a consent decree putting this agreement into execution, and this was reversed upon appeal. The court, through MARSHALL, J., stated that such a judgment was beyond the jurisdiction of the circuit court. The court stated that,—

". . . If the matter dealt with by the judgment in this case was entirely outside of the court's jurisdiction, then . . . the result was not merely erroneous and so, binding on all parties which the court had jurisdiction of, and their privies, till set aside in some of the ways appointed by law, not including collateral attack, but was a usurpation and . . . the proceedings void in the broadest sense of the term. To satisfy the foregoing, manifestly, the jurisdictional defect would have to go to the fullest extent to preclude the parties to the litigation from attacking the judgment collaterally, since, for the time being, all consented to what was done, so far as they had capacity to consent. It follows that, if what was done was not within the scope of a will contest, yet the parties saw fit to mutually bring it into the litigation and the court had jurisdiction of such subjects, the result cannot be considered entirely outside of its authority and so void."

The court made a "distinction between jurisdiction of the subject matter in the technical sense, rendering a judicial determination, however erroneous, binding" until reversed in some of the ways provided by law, and "a mere assertion or pretense of jurisdiction without any real foundation for it whatever," rendering the determination wholly void. As an example, the court in the *Rice Case, supra,* pointed out that since a county court had jurisdiction only of the estates of deceased persons, the actual death of the person with respect to whose estate authority is attempted to be asserted is essential to any valid judgment, and if in fact the person adjudged to be dead is alive, the proceedings in his estate are void. Applied to the subject of wills, the conclusion of the court was that since the right to make a will is a constitutional right which courts and parties are powerless to take away, the court has no jurisdiction to probate in place of the will the agreement of interested parties. The sole question before the court upon a will contest is whether the will is what it purports to be. The *Rice Case* followed *Will of Dardis,* 135 Wis. 457, 115 N. W. 322, to the effect that an agreement to substitute some other distribution for that prescribed in the will is wholly void and not entitled to be enforced by the probate court. The *Dardis Case,* however, did not involve, deal with, or dispose of the question dealing with the jurisdiction of the county and circuit courts to enter orders substituting such agreements for the will. See also *Will of Stanley,* 223 Wis. 345, 269 N. W. 550, and *Cline v. Whitaker,* 144 Wis. 439, 441, 129 N. W. 400. In the latter case the court said:

"In dealing with such a matter as this the distinction between total want of jurisdiction, absolute absence of power, and want of jurisdiction, in the sense the term is commonly used, characterizing judicial action which is so highly erroneous as to be without legal justification, yet not, as has been said, beyond competency to err,—must be kept in mind. The two phases of jurisdiction were discussed at consider-

able length in *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909, one being termed want of power and the other inexcusable departure from established principles;—a gross misuse of power. The former is a usurpation. The resulting judgment or order is totally void. The latter is mere error. The resulting judgment is valid, till avoided in proceedings to that end."

The question is what bearing the doctrine therein set forth has upon the present controversy. This requires an examination in some detail of other cases in this court to ascertain whether the orders of the county court in this case, purporting to approve the account and to discharge the executors and administrators, respectively, were so completely devoid of jurisdiction as to fall within the rule of the *Rice Case.*

In the case of *Barney v. Babcock's Estate,* 115 Wis. 409, 91 N. W. 982, it was held in a proceeding against a surety upon the bond of an administrator *de bonis non* that the appointment of such administrator cannot be declared void if the county court making the same had jurisdiction of the subject matter. In that case an executor and trustee filed his final account, and an order was made discharging him from all liability and from his bond upon delivering the residue to those entitled thereto. It was held that the county court had thereby adjudicated that the duties of the executor were not fully terminated until payment of the trust fund to the persons thereto entitled, and that upon resignation of the executor and petition for the appointment of an administrator *de bonis non,* the court had jurisdiction of the subject matter of such appointment. It was contended that the order of the court conditionally releasing and discharging the executor and trustee was based upon an erroneous view of the will and the law, but it was held that if so, it was a mere error in the exercise of an undoubted jurisdiction of the court and conclusive and final until reversed or set aside in

one of the ways provided by the judicial system for reviewing such matters.

In *Brennan v. Moon,* 211 Wis. 304, 247 N. W. 837, it was held that an administratrix who distributed the estate to persons designated by the judgment of the county court having jurisdiction of the estate is protected, and upon completion of the distribution and discharge in accordance with the county court's judgment, she is thereupon released from liability and her sureties discharged. The decree in the *Brennan Case* was induced by an innocent misstatement of fact in the petition of the administratrix to allow her accounts and to distribute the estate. To the same effect is *Cook v. Nelson,* 209 Wis. 224, 244 N. W. 615, where the final decree of distribution was erroneously entered because of a mistake of law on the part of the county judge. In neither case was there any intentional fraud upon the court.

It has also been held consistently that a county court may set aside its judgments induced by fraud or tainted with irregularity. The earliest statement of this rule is that contained in *In re Fisher,* 15 Wis. *511, *521. The court there said :

"The county court, sitting as a court of probate, may, at any time, in furtherance of justice, revoke an order which has been irregularly made or procured by fraud."

In *Estate of Staab,* 166 Wis. 587, 166 N. W. 326, where a fraud was perpetrated upon a county court by procuring the probate as a will of a document executed by an incompetent person, it was held that if the estate is still before the court for administration, the mere expiration of the time within which an appeal might have been taken from the order admitting the will to probate, or the fact that interested persons, knowing the facts, concealed or withheld them from the court, does not affect the power or duty of the court to purge its proceedings of the fraud and to administer the estate as that of an intestate.

In *Guardianship of Reeve,* 176 Wis. 579, 186 N. W. 736, there was a devise to testator's widow for life, thereafter to his son for life, and upon the death of the latter leaving issue surviving, to such issue absolutely. The son died leaving no issue, but his widow falsely and fraudulently represented to the court that the testator's son left surviving him an infant son. In accordance with her representations and petition, a guardian was appointed for the minor. These facts subsequently appearing, it was held that a court of probate jurisdiction has inherent power over its judgments and particularly the power to set aside judgments obtained on false statements or representations made to the court. It was further held that the fact that there was no minor heir rendered the original guardianship proceedings not merely subject to being set aside for fraud, which they were, but void for want of jurisdiction because of the nonexistence of anyone for whose benefit guardianship proceedings could be taken. There being no actual ward, there could be no guardianship proceedings any more than there could be probate proceedings without death of the person whose estate is attempted to be administered.

The case of *Will of Scheuren,* 203 Wis. 69, 233 N. W. 622, involved an application to set aside the probate of a will. Those principally interested under the will had made false misrepresentations to the other interested parties to induce them not to contest the probate of the will. It was held that when these facts appeared, coupled with an offer to show that the testatrix was wholly incompetent, the county court had the power and duty to open up the proceedings in order to prevent imposition upon it. For other cases involving fraud upon the court, see *Estate of O'Neill,* 90 Wis. 480, 63 N. W. 1042; *Parsons v. Balson,* 129 Wis. 311, 109 N. W. 136; *Scheer v. Ulrich,* 133 Wis. 311, 113 N. W. 661.

In *Estate of Cudahy,* 196 Wis. 260, 219 N. W. 203, the heirs and legatees of Patrick Cudahy instituted proceedings

to secure a rebate of inheritance taxes paid under protest upon gifts made during his lifetime. There was no appeal from the order settling the inheritance tax, and the time for appeal had gone by. Thereafter, the case of *Schlesinger v. Wisconsin*, 270 U. S. 230, 46 Sup. Ct. 260, had held that the statute resulting in the order of the county court was unconstitutional. It was held that the plaintiffs were not entitled to relief, the court stating that, while a county court, regardless of any statutory provision or in the absence of it, may open up its judgments when they are procured by fraud or rendered without jurisdiction, it may not reverse or set aside its orders or vacate its judgment merely upon the ground of error in entering the judgment. It was stated that if such were the rule, there would be no finality to the procedure in county courts and an intolerable situation would be created.

*Estate of Bailey*, 205 Wis. 648, 238 N. W. 845, had to do with the same estate as that involved in *Brennan v. Moon, supra*. The appeal was from an order of final distribution which vacated a former order of the same character and assigned the entire estate to an illegitimate daughter of decedent. It was charged and found that the administratrix had withheld from the court information concerning the existence of this child, and intimated that the failure on her part so to inform the court constituted passive, if not active, fraud. The court goes on to point out, however, that probate courts have always enjoyed unusual powers of control over their proceedings, and that the courts may revoke orders in cases of fraud, accident, or mistake. While it is recognized that, where the parties in interest have been represented at the hearing and final decree has been given, the court has no general power to open the decree because of error either as to law or facts, it was concluded the original order was at least based upon a "mistaken notion of the facts" in a proceeding to which the illegitimate child was not a party. This was held to be a proper ground for vacating the order.

The *Cudahy Case* is distinguished upon the ground that there the orders were predicated upon an error of law. In the *Brennan Case* it was sought to recover from the administratrix and her bondsmen property paid out and distributed by her in accordance with the original decree. It was held, (1) that the *Bailey Case* did not adjudicate the issue of fraud by the administratrix, but was based on mistake of fact coupled with the fact that the person seeking revision was not a party to the proceedings and hence not bound by it; (2) that there was no fraud or suppression of the facts by the administratrix; and (3) that she was fully protected by the discharge.

With the foregoing review of the authorities in mind, application to this case of the principles there set forth may briefly be made. It is our conclusion that the doctrine of the *Rice Will Case, supra,* has no application to the facts of the present case. It is one thing to hold that it is wholly without the jurisdiction of the county court or the circuit court upon a will contest to ignore the issues and to substitute for the will of the testator a distribution agreed to by the interested parties and departing from the terms of the will. It is quite another thing to hold that a county court has no jurisdiction to entertain the resignation of the executor, examine his accounts, discharge him, and appoint his successor. The jurisdiction so to consider his request to be relieved of his duties, to examine the account proffered for approval, and to determine whether the administrator or executor has satisfactorily discharged his trust, appears to us to be beyond question, as pointed out in the *Barney* and *Brennan Cases, supra.* The administrator or executor who pays or distributes an estate in accordance with the final decree is fully protected, at least as long as the order stands, and so is the administrator or executor who has been fully discharged. The situation is quite different where a disposition of the estate by agreement between the parties in interest is at-

tempted to be substituted for the will of the testator. The sole jurisdiction in such a case is to ascertain whether the will in question is testator's will; whether it was executed in accordance with statutory formalities; whether testator was competent; and whether it was obtained through undue influence. As illustrating the narrow limits of the *Rice Case,* so far as the jurisdictional point is concerned, see *First Trust Co. v. Holden,* 168 Wis. 1, 9, 168 N. W. 402. In this case the petition for probate of Alonzo Kane's will was filed in 1899. At this time objection to its probate was filed on behalf of his grandchild, Alice Kane Sanderson Holden, through her guardian *ad litem,* on the grounds of testamentary incapacity and undue influence. A hearing was had on the petition and evidence taken bearing on the capacity of the testator, and in 1901, the court entered an order adjudging that the testator was not legally competent and declining to admit the will to probate. The court thereupon appointed the trust company administrator. Under the will, had it been valid, Mrs. Holden would have been entitled to one fourth of the income of decedent's estate during life, and upon her death leaving children surviving her, they would be entitled to a portion of the income during their lives. After the expiration of the life annuities, the income was to go to charitable institutions. It appeared that, in view of the objections to the probate of the will, all the parties interested in the probate proceedings had entered into a trust agreement providing that the trust be conveyed to the trust company, and that the agreement take effect. *inter partes* regardless of the disposition of the will contest. Conveyances were executed in compliance with this agreement. The general guardians of Mrs. Holden, who was then a minor, joined in the agreement. When Mrs. Holden became of age in 1903, she signed a ratification agreement in 1904. The trial court declined to set aside the order denying probate of the will, and held that the conveyance made by

Mrs. Holden while a minor to the trust company upon the trust therein specified was subject to disaffirmance, and that it had never been disaffirmed but it had in fact been ratified. Upon appeal, it was the position of the guardian *ad litem* for Mrs. Holden's children that the order denying the probate of the proposed will was without jurisdiction under the doctrine of the *Rice Case*. This court, in disposing of that contention, said:

"In making this order the court unquestionably had jurisdiction of the subject matter. The record discloses a proper proceeding and an inquest upon the evidence to determine Kane's mental competency to make the will, and, though the court had before it the admission of the parties as to his mental incapacity and approved the so-called 'trust agreement,' it does not follow that the order denying probate to the alleged will was not a proper and legitimate exercise of its judicial power, based upon good and sufficient grounds, to deny probate to the proposed will."

In the *Holden Case,* evidence was actually produced bearing upon the issue of competency, and an adjudication made in response thereto was held to be within the jurisdiction of the court. In the case of the administrator or executor, the power of the court is to examine his accounts and to determine whether he has properly discharged his trust. This includes the power to commit judicial error. Such error may be of fact or law and must be redressed by appeal as provided by the statutes or by invoking the provisions of sec. 324.05, Stats., which provide:

"*Extension of time for appeal; retrial.* If any person aggrieved by any act of the county court shall, from any cause without fault on his part, omit to take his appeal within the time allowed, the court may, upon his petition and notice to the adverse party, and upon such terms and within such time as it shall deem reasonable, but not later than one year after the act complained of, allow an appeal, if justice appears to require it, with the same effect as though done seasonably; or the court may reopen the case and grant a retrial, but the

order therefor must be made within one year after the act complained of."

The order or judgment, however erroneous, must stand until reversed, modified, or set aside in accordance with the statutes heretofore mentioned. It is not subject to collateral attack merely because it is erroneous, nor is it void for that reason. Except for the statutory provisions for appeal or retrial, it may only be set aside upon the ground that its entry was induced by or constituted fraud upon the court or with certain limitations that need not be discussed here, that it was the result of mistake or accident. Such fraud may consist of a suppression or misrepresentation of facts, the offering for probate of the will of a known incompetent, or misrepresentations to interested persons to induce them not to contest the will, and thus to take from the court the benefit of their testimony as to the competency of the testator or the fact of undue influence. Upon such a showing, a court has the inherent power, at least at any time while the estate is before it in probate, to set aside its judgments, purge the record of fraud, and protect itself from imposition. It must be concluded that the county court had jurisdiction to enter the orders discharging the appellants from their duties and liabilities as executors and administrators, respectively. The trial court did not set aside the orders, and until they are set aside, the orders being within the jurisdiction of the court, these executors and administrators stand discharged from their liability and are not subject to citation.

Reliance is had upon two statutes which respondent contends vest the court, regardless of the discharge, with power to cite these appellants. Sec. 317.04, Stats., provides for liability of executors and administrators for waste. It is provided that when an executor or administrator shall neglect to raise money by collecting debts or selling property of the estate, or neglect to pay over money in his hands, and the value of the estate be diminished or persons interested suffer,

the same shall be deemed to be waste, and the damages may be charged against the executor or administrator and he shall be liable on his bond. Sec. 317.05 provides:

"Every executor or administrator shall render his account as required by section 313.13, and he shall render such further accounts of his administration from time to time as may be required by the county court, until the estate shall be wholly settled; and he may be examined on oath by the court upon any matter relating to his account and the settlement of the estate."

Sec. 317.04, Stats., does nothing more than define waste. Sec. 317.05 has no application except to the administrator or executor who is currently qualified and acting. It can have no effect or application after there has been a final decree entered discharging the executor or administrator and his bondsmen from their liability, and releasing him from his duties. It is contended that the cases have held that an executor's liability exists until the estate is fully settled. *Kellogg v. Stroud,* 166 Wis. 12, 163 N. W. 261; *Wallber v. Wilmanns,* 116 Wis. 246, 93 N. W. 47; *Karel v. Pereles,* 161 Wis. 598, 155 N. W. 152; *Newcomb v. Ingram,* 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171. The doctrine of these cases only applies where the executor has not been discharged.

It may be contended that the court's failure formally to set aside the decrees is a purely technical omission and that it must be supposed that it was the court's intention to set them aside upon the ground of fraud or mistake. The record will only sustain the conclusion that the court regarded the releases as wholly void from want of jurisdiction or ineffective, if valid, to prevent a citation under sec. 317.05, Stats. There was no hearing on or consideration of the issue of fraud or mistake. Further than this, the petition does not allege, or the record which it incorporates show, that the earlier orders were induced by fraud or mistake. A

mere casual examination of the accounts filed by the executors and administrators, together with the other papers in the record, indicates that the county court had disclosed to it and knew precisely what the executors and administrators were doing. The various accounts show merchandise sales, farm sales, theater-ticket sales, wages, expenditures for merchandise, advertising, etc. It is obvious from these accounts that the executors and administrators were running the estate as a going business. There is no allegation that interested parties were not *sui juris,* and they appeared personally upon the hearing in each instance. There are no allegations that they were imposed upon in any way. Whether other facts may be alleged to cure these deficiencies is, of course, not within our competency to determine. It is enough to state that the petition, including the record, neither alleges fraud in the form of misrepresentation or suppression of facts, nor imposition upon the interested parties. While the rules of pleading are somewhat more liberal in probate proceedings, it is plain enough that somewhere in the proceedings there must be a showing of fraud or mistake to justify vacating the former decrees. Here the petition was insufficient, and there being no hearing upon this issue, no facts were before the court to warrant it in setting aside its former orders, had it in form taken such action.

*By the Court.*—Orders reversed, and cause remanded for further proceedings in accordance with this opinion.

A motion for a rehearing was denied, without costs, on September 14, 1937.