IN MATTER OF ESTATE OF KENNEDY, Deceased: STEUSSY, Appellant, v. FIRST WISCONSIN TRUST COMPANY, and another, Respondents.

*No. 75–162. Argued November 5, 1976.—*
*Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 75.)

414

For the appellant there were briefs and oral argument by *Cleland P. Fisher* of Janesville.

For the respondent, First Wisconsin Trust Company, there was a brief by *James P. Brody, Edwin F. Walmer, Geoffrey R. Greiveldinger,* and *Foley & Lardner,* and oral argument by *Mr. Brody,* all of Milwaukee. For respondent, Elmira "Peg" Hubing, there was a brief by *Ralph M. Hoyt* and *Hoyt, Greene & Meissner, S. C.,* and oral argument by *Ralph M. Hoyt,* all of Milwaukee.

BEILFUSS, C. J. In June of 1970, the decedent, Leonie Kennedy, consulted her attorney, John Cannon, and informed him of her wish to make a will leaving everything to "Peg" Hubing. She met with Cannon again on July 3, 1970, and her will was gone into in greater detail. At that time she told Cannon she had one niece, Doris Steussy, but reaffirmed her intention to give everything to "Peg." Cannon drafted a revocable pour-over trust and a will, which left the residuary estate to the trust. After Miss Kennedy's death the beneficiary of the trust was to be Peg Hubing. The First Wisconsin Trust Company was named executor of the will and trustee. Cannon went over these draft documents with the decedent "line by line," but they were not signed.

Leonie Kennedy was, until a few years before her death, the companion and secretary of Miss Fay McBeath. Miss McBeath was the niece of one of the owners of The Milwaukee Journal. Elmira K. "Peg" Hubing worked for The Journal as an industrial nurse, and it

was through Miss McBeath that Peg Hubing met the decedent. Miss McBeath established a number of trusts which were administered by The First Wisconsin Trust Company. The decedent was the beneficiary of one trust and was, along with the trust company and another individual, co-trustee of a second. Attorney Catherine Cleary of The First Wisconsin Trust handled the McBeath trusts; through those and other business contacts she became acquainted with the decedent. After Cannon prepared the trust and will he sent copies of them to Catherine Cleary to see if she approved of them.

On August 18, 1970, Cannon called on the decedent to see if she wanted to sign the documents. She was busy and did not want to consider signing the documents at that time. In early October of 1970, Peg Hubing became "concerned" about the decedent and reported her concern to a Frank Kelly of The Milwaukee Journal. Mr. Kelly then called Catherine Cleary to discuss the decedent's situation. Because Miss Cleary had been contacted by Cannon in July concerning her opinion of the will and trust, she volunteered to contact both the decedent's physician, Dr. Foerster, and Cannon. She called Cannon on October 5th and, as a result, Cannon, in an attempt to have the will and trust signed, made an unannounced visit to the decedent's home; the decedent told Cannon she was busy and did not invite him in.

On October 9, 1970, Leonie Kennedy was hospitalized. Her regular physician and her neurosurgeon determined that the decedent should have an exploratory craniotomy. Dr. Foerster contacted Catherine Cleary on October 15th and told her that Miss Kennedy was to have surgery the next day. She called Cannon, wondering if the will had been signed, and suggested that, under the circumstances, he ought to attempt to have it signed. He told her of his efforts of October 6th. It was then agreed that Miss Cleary would take the will to the hospital. Because of

the timing Miss Cleary omitted the revocable trust and had a will prepared giving everything to Peg Hubing. She contacted the neurosurgeon to find out if Miss Kennedy was competent to sign a will. The doctor stated that Miss Kennedy was lucid intermittently and that Miss Cleary might see her to determine whether she was able to sign a will. Miss Cleary and another officer of The First Wisconsin Trust went to the hospital. She was recognized by Miss Kennedy as she entered the room. After visiting with her for ten minutes Miss Cleary was satisfied that Miss Kennedy was competent. The other officer was brought into the room and it was explained to Miss Kennedy that the will gave everything to Peg Hubing, and she was asked if that was what she desired. She stated it was and the will was signed. On the same day that Miss Kennedy signed the will she signed a consent for surgery which contained the following caveat: "If competent, patient should sign in space indicated. If a minor or incapable of signing, responsible representatives should sign in lower spaces." Leonie Kennedy survived the operation and lived several months in a rest home and later in the home of Peg Hubing's sister. She died on July 29, 1971.

Timely notice of petition to admit the will, signed October 15, 1970, was sent to appellant Doris Steussy, the only heir at law. The will was admitted to probate on August 31, 1971. The appellant did not appear or contest the will.

In June of 1972, a petition was filed in probate court to set aside the admission of the will to probate. The basis for this petition was that an heir at law, John A. Carr, had not been notified of the petition for probate. This petition was dismissed in October of 1972 because petitioner's attorney admitted that John A. Carr was not of sufficiently close relationship to make a valid objection. It was asserted, at that time, that Doris Steussy

ought to be substituted for Carr because when the will was admitted to probate there was a failure to disclose the mental capacity of the decedent to the court and this omission amounted to a constructive fraud upon the court or induced the court to act through mistake. This amended objection to the probate of the will was eventually dismissed because the allegation of constructive fraud was not supported by affidavit and the allegations in the petition were mere legal conclusions.

A further amended petition to vacate the order admitting the will to probate was filed in February of 1973. In addition to realleging a fraud upon the court, it was also alleged that the decedent was incompetent at the time the will was made and that Peg Hubing exercised undue influence on Leonie Kennedy. An affidavit of a doctor and hospital records were attached to the petition to support the claim of incompetency. The personal representative of the estate filed a motion to quash, which was denied. The probate court ordered a trial on the following issues: Whether evidence relating to the validity of the will of the decedent was fraudulently concealed from the court and, if so, whether the order admitting the will to probate should be set aside on grounds that the will was invalid. On the motion of the personal representative and Peg Hubing, the court struck allegations of the complaint that the will was obtained by undue influence. As its reason for striking these allegations, the court noted that the sole issue was whether facts showing the will to be invalid were fraudulently concealed from the court.

After a trial to the court, which commenced on September 19, 1974, findings of fact and conclusions of law were prepared and filed. Specifically, the probate court found that the decedent was competent when she signed the will and based on this finding found that there was no fraud on the court at the time the will was admitted

to probate. To conform with the findings it issued an order dismissing the petition to set aside admission of the will.

■ If the probate court's findings of fact were not against the great weight and clear preponderance of the evidence they must be affirmed. *Larkin v. Johnson*, 67 Wis.2d 451, 457–58, 227 N.W.2d 90, 94 (1975) ; *Estate of Ensz*, 66 Wis.2d 193, 208, 223 N.W.2d 903, 912 (1974).

■ ■ The question before the probate court was whether a fraud on the court had been committed when the will was admitted to probate. The alleged fraud was the failure of Catherine Cleary to disclose to the probate court the facts and circumstances surrounding the making and signing of the will. This court has recognized that passive or constructive fraud can be a basis for modification or reversal of a prior order of the probate court.[1] Here the appellant received timely notice of the petition to admit the will to probate but did not appear to contest its admission. She did not attempt to vacate this order until the time for appeal had passed, but statutory time limits will not prevent the court from vacating the order if the petition is made on the ground that the order was induced by or constituted fraud upon the court. *Estate of Penney*, 225 Wis. 455, 470, 274 N.W. 247, 254 (1937).

"Such fraud may consist of a suppression or misrepresentation of facts, the offering for probate of the will of a known incompetent, or misrepresentations to interested persons to induce them not to contest the will, and thus to take from the court the benefit of their testimony as to the competency of the testator or the fact of undue influence." *Id.* at 471, 274 N.W. at 254.

It was the appellant's contention at trial that the decedent was incompetent, and that if the circumstances

---

[1] *Estate of Bailey*, 205 Wis. 648, 656, 238 N.W. 845, 848 (1931). *See also: Estate of Staab*, 166 Wis. 587, 591–92, 166 N.W. 326, 327 (1918).

surrounding the making and signing of the will had been disclosed at the time the will was admitted to probate the court would also have concluded the decedent was incompetent.

■ The probate court applied the right standard for passive fraud, i.e., that there must have been "[a]n omission of a fact which, if known, would have required a different determination by the court." The facts which were unknown when the will was admitted to probate did not warrant a different determination after they were made known at trial. The court, after considering the circumstances surrounding the making of the will, agreed with the witness who offered the will for probate that the decedent was competent. Because the trial court concluded the decedent was competent, the omission of the circumstances surrounding the making of the will was not a fraud upon the court. There was no allegation of active fraud. If the finding of fact that the decedent was competent is not against the great weight and clear preponderance of the evidence, and we hold it is not, the conclusion of law that there was no fraud on the court must be affirmed.

In support of a finding that Leonie Kennedy was competent are the following evidentiary facts: Testimony of Donald Buzard, a witness to the will, that he visited with Kennedy for ten minutes when the will was signed and thought she was "alert, rational, and knew what was going on." Based on the visit he had with her he had no doubt as to her competency to execute a will. The testimony of Catherine Cleary, the second witness to the will, was that she too had no doubt as to the competency of the decedent to execute a will. She also testified that the decedent was alert and responsive, understanding the conversation and everything that was explained to her. As a result of previous business dealings, Miss Cleary knew the decedent well and was in a position to

make an objective judgment as to her competence. Because the decedent was scheduled to have exploratory brain surgery and because Miss Cleary was concerned about the medical appropriateness of talking to the decedent about the will, she contacted the decedent's neurosurgeon. He informed her that he had obtained Miss Kennedy's consent to perform the operation and that she was lucid intermittently. Catherine Cleary stated the neurosurgeon indicated there was "no reason not to see if she might be able, willing, and wanting to sign the will." Testimony of Peg Hubing, an interested party, that when Miss Cleary entered the decedent's hospital room the decedent immediately recognized her and said, "Why, hello, Miss Cleary." Finally, there was nothing in the disposition of the estate which might suggest that Miss Kennedy was incompetent. Miss Kennedy and Miss Hubing had been friends since 1935. Miss McBeath had been Miss Kennedy's closest friend for years and when Miss McBeath died she left a portion of her estate to Miss Kennedy. After Miss McBeath's death, Miss Hubing was Miss Kennedy's only remaining friend and they visited with each other two or three times a week. Miss Kennedy had expressly indicated she did not want Doris Steussy to inherit her property. Over a period of months the decedent had consistently expressed her intention of giving everything to "Peg" Hubing.

The facts and holding in *Estate of Kitz,* 13 Wis.2d 49, 108 N.W.2d 116 (1961), are helpful in analyzing these facts. In *Kitz* the testatrix was in the hospital when the attorney was called to the hospital to draft the will. The attorney had known the testatrix over a number of years. The testatrix was only intermittently lucid. The will was read to the testatrix while witnesses were present and the testatrix stated the disposition accorded with her wishes. The will was somewhat unusual in that it gave nothing to the natural objects of her bounty, but she

maintained for a number of years that she wanted her entire estate to go to her church. The witnesses to the will all testified that the testatrix was competent when the will was made. Conflicting testimony concerning competency was offered but the trial court, relying on the witnesses who saw the testatrix when the will was made, found that she was competent. Because this finding was not against the great weight and clear preponderance of the evidence, we affirmed.

In this case, against a finding of competence was testimony of Dr. Henry Suckle that there was "great question in my mind whether this lady really had testamentary capacity during this period." He testified that he never saw the decedent but that he also believed the decedent to have been intermittently lucid. He based his testimony on the hospital records.

The finding that the decedent was competent was not against the great weight and clear preponderance of the evidence. We believe the great weight and clear preponderance of the evidence supports this finding. Under the circumstances of this case the witnesses to the will acted reasonably and responsibly. Prior to taking the will to the hospital, Catherine Cleary consulted with the decedent's surgeon about the propriety of having a will signed. She was informed that the decedent was intermittently lucid. As a lawyer experienced in the probate area she was aware that a will signed at a lucid interval was valid.[2] The question of whether a testatrix had testamentary capacity at a particular time must be determined by the immediate circumstances of the transaction examined in the light of human experience.[3] The questioning of the decedent by both witnesses was ap-

[2] *Estate of Kitz,* 13 Wis.2d 49, 59, 108 N.W.2d 116, 121 (1961).
[3] *Estate of O'Loughlin,* 50 Wis.2d 143, 145–148, 183 N.W.2d 133, 136–37 (1971); 1 MacDonald, *Wisconsin Probate Law,* sec. 6.165 (7th ed. 1972).

propriate. In addition, Catherine Cleary had known the decedent for a number of years and could relate her previous capacity to her capacity when signing the will. In an uncontested hearing offering the will for probate, Catherine Cleary was under no obligation to do more than state her belief that the testatrix was competent at the time the will was made.

In her pleadings Doris Steussy alleged that the testatrix had been unduly influenced by Peg Hubing in making the will. On motion of the personal representative and Peg Hubing, this allegation was struck from the complaint. The trial court had permitted the amended petition to vacate the order admitting the will to probate to be litigated because Doris Steussy had attached records to support the allegation that a fraud had been perpetrated on the court. This was required by *Estate of Kissling,* 270 Wis. 242, 244, 70 N.W.2d 685, 686 (1955). In that case this court held a general statement that a testatrix was incompetent was insufficient to show a fraud on the court. Without some kind of a prima facie showing of fraud a mere allegation is not sufficient to require a court to reopen the admission of a will to probate after the time for appeal of such admission has expired. The same is true of a claim of undue influence, for undue influence is merely a species of fraud.[4] A general statement alleging undue influence is not enough to support reopening of the admission of the will. The petition to vacate was litigated for the limited purpose of considering whether fraud had occurred by suppression of evidence showing incompetence at the time the will was made. If the petitioner desired to present evidence concerning undue influence she had to do more than make a conclusionary allegation of undue influence. Some

[4] *Will of Knierim,* 268 Wis. 596, 602, 68 N.W.2d 545, 548 (1955); *Will of Schaefer,* 207 Wis. 404, 411, 241 N.W. 382, 385 (1932).

prima facie showing had to be made, or evidentiary fact alleged, before the court could take evidence on this objection. Because the prima facie showing had not been made the court was correct in striking that section of the complaint and in refusing to take testimony on this subject.

Even if we were to consider whether undue influence was exerted on the decedent, a review of the evidence offered shows that there was no undue influence. Leonie Kennedy wanted to give everything to Peg Hubing and this was what the will provided. Undue influence should not be confused with the influence which results naturally from kindnesses done.[5] The elements of undue influence are well known and have been often articulated by this court.[6] One of these elements is disposition on the part of the party charged to influence unduly the susceptible person for the purpose of procuring an improper favor. This element was not present. While Catherine Cleary attempted to have a will which benefited Peg Hubing signed, there was nothing improper about this. She only tried to carry out the wishes of her friend Leonie Kennedy.

*By the Court.*—Order affirmed.

---

[5] *Will of Schaefer, supra* n. 4.

[6] *See: In re Estate of Christen,* 72 Wis.2d 8, 13–14, 239 N.W.2d 528, 531 (1976).