IN the MATTER OF the ESTATE OF George LECIC, Deceased:

Dobrila LECIC, personal representative of the Estate of George Lecic, Deceased, Appellant,

v.

The LANE COMPANY and Schweiger Industries, Respondents.

Court of Appeals

No. 80–1489. Submitted on briefs February 17, 1981.
—Decided March 26, 1981.
(Also reported in 305 N.W.2d 194.)

714

For the appellant the cause was submitted on the brief of *William T. Schmid* and *Jerome E. Randall* of Wauwatosa.

For the respondent The Lane Company the cause was submitted on the brief of *Kohner, Mann & Kailas, S.C.,* and *Robert L. Mann,* of counsel, for Milwaukee.

For the respondent Schweiger Industries the cause was submitted on the brief of *Howard, Peterman & Eisenberg, S.C.,* and *Kevin D. Mathews,* of counsel, of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J.   The issue in this appeal is whether the trial court properly extended the time for filing claims against an estate in a probate proceeding on the ground that the personal representative of the estate, and the attorney for the estate, committed passive fraud on certain creditors. We agree with the trial court's determination on this issue and affirm, although we modify the claim amount in one of the orders.

George Lecic (George), owner and operator of a furniture store called George's Shopping Center, died on April 30, 1978. Dobrila Lecic (Dobrila), George's widow, was appointed special administratrix of George's estate. An order was filed on May 4, 1978, in which the court set a date for a hearing on a petition for administration for George's estate and ordered that all creditors' claims be filed on or before August 4, 1978. The order further set a date for a hearing on the creditors' claims and commanded that notice of the time for filing claims and the hearing be given by publication in The Daily Reporter. Notice was published on May 9, 16, and 23, 1978. On June 12, 1978, Dobrila was appointed personal representative of George's estate.

On May 5, 1978, prior to the publication of the notice to creditors to file claims, Dobrila wrote a letter to George's suppliers advising them of George's death, of her appointment as special administratrix "responsible for the continuation of the business and the payments of all accounts payable," and of the name and address of the attorney she had retained to handle George's estate. On July 13, 1978, The Lane Co. (Lane), one of George's creditors, sent a mailgram to George's Shopping Center stating that it was "imperative we receive payment." The attorney retained by Dobrila to handle George's estate replied to Lane in a July 17, 1978, letter which simply stated: "It is our intention to pay the delinquent account as soon as money becomes available. We shall keep you advised." In a July 28, 1978, letter Lane's credit manager, Vince J. Grytko (Grytko), wrote to the estate's attorney regarding the status of George's Shopping Center's account, and attached an itemized statement of the delinquent account. On August 18, 1978, Grytko wrote the estate's attorney again, asking: "Will you please advise when we can expect a payment?" The estate's attorney responded on August 23, 1978: "We wish to state that as soon as money becomes available in the estate, we shall pay the invoices." The debt owed Lane was never paid. On February 23, 1979, Schweiger Industries (Schweiger), another creditor, petitioned the court for an extension of time to file claims on the ground that Dobrila and the estate's attorney acted fraudulently in representing to Schweiger and others that their claims would be paid.

On July 12, 1979, Lane filed a petition with the trial court requesting that the court extend the time for filing creditors' claims until ten days beyond the court's decision on the petition. As a basis for this request, Lane alleged that through their repeated statements to various creditors of their intention to pay the delinquent accounts, Dobrila and the estate's attorney had fraudulently

prevented Lane and other creditors from filing claims against George's estate. Lane attached a statement of its claim for $6,119.03 to the petition.

On July 30, 1979, the trial court held a hearing on that petition and a decision was filed September 5, 1979, in which the court said "that a creditor who can satisfy the court by clear and convincing testimony that his failure to file his claim within the time limit was induced by fraud committed by the personal representative or her attorney acting for the estate is entitled to have his claim considered by the court; that in such a case the failure to file timely would not be a bar." The court then said that creditors should file their claims asserting fraud to avoid the automatic late-filing bar, and then "proceed to hearing in the usual manner to determine whether the alleged fraud was such as to excuse the late filing."

On January 31, 1980, Schweiger filed its claim for $5,610.85. On February 21, 1980, Lane filed its claim for $6,119.03 with a notation that it was filed late because of "alleged fraud on the part of the personal representative and her attorney."

A hearing on the late-filed claims of Lane and Schweiger was held on June 25, 1980. At the hearing, Robert Louis Short (Short), the treasurer for Lane, testified regarding the procedure generally followed by Lane when the operator of a store that is doing business with Lane dies. He explained that usually, within thirty days, the unpaid account of the deceased operator is turned over to a collection agency. Because of the letters from Dobrila and the estate's attorney assuring payment, Short said he did not turn George's Shopping Center's account over to a collection agency.

At the end of Short's testimony the court rendered an oral decision saying:

Time for filing claims expired August 4, 1978. The court is of the opinion that Dobrila Lecic at the time she wrote the letter of May 5, 1978 to the creditor had a

duty to inform the creditor that the time for filing claims expired on August 4, 1978. Her failure to notify the creditor constituted passive fraud. A person acting in the capacity of Dobrila Lecic at the time had not only a duty not to misrepresent but she had a duty not to remain silent under these circumstances. That duty was emphasized by further correspondence which merely put her upon notice that the creditor was acting in reliance upon her previous statement and expected the claim to be paid without anything further being done on the creditor's part.

The court is convinced by clear and convincing testimony that the creditor was mislead [sic] by the letter of May 5, 1978 and subsequent letters up to the date of August 4, 1978, the last date for the filing of claims. That the creditor was mislead [sic] ; that as a result of this misleading by failure to speak, the creditor acted in reliance upon the statement and representations made by Dobrila Lecic, and the attorney [for the estate] and did not file its claim, and that but for such statement so made the creditor would have taken appropriate action through its collection agency and would have filed its claim within the time limited.

Accordingly, the court extends the time for filing claims to permit the filing of this claim, and the claim as filed is in the amount of $7,136.04. [1]

The court then indicated that it would proceed to hear the claim of Schweiger. Dobrila's trial counsel indicated that the proof would be the same and that he was willing to let the testimony in the Lane case stand also for the Schweiger claim. The court then ruled that Schweiger's claim could be filed.

An order filed July 8, 1980, ordered that Schweiger's claim of $5,835.85[2] "shall be deemed to have been filed

---

[1] Lane had presented evidence that the correct amount of its claim against the estate was $7,136.04 instead of $6,119.03.

[2] This amount is incorrect. The January 31, 1980 claim of Schweiger was for $5,610.85. The trial court apparently based its order on the first Schweiger claim, filed on September 13, 1978. However, a statement attached to the January 31, 1980 claim

. . . prior to August 4, 1978, and shall be accorded its statutory rights and distribution as allowed by appropriate Wisconsin Statutes forthwith." A similar order was filed on July 9, 1980, ordering that Lane's claim in the amended amount of $7,136.04 was to be deemed properly and timely filed. This appeal is from those orders.

## STATUTES INVOLVED

859.01 Limitation on filing claims against decedent's estates. (1) Except as provided in sub. (3) and s. 859.03, all claims against a decedent's estate including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims.

859.05 Time to file. Upon the filing of an application for administration, the court or the probate registrar under informal administration proceedings shall by order fix the time within which claims against the decedent shall be presented or be forever barred. The time shall be 3 months from the date of the order.

859.07 Notice; publication. Notice of the time within which creditors may present their claims and of the time when the claims, as set by the court or probate registrar under informal administration proceedings, will be examined and adjusted by the court shall be given by publication, under s. 879.05(4), and may be given with the notice for granting letters. No date for examination and adjustment need be given in informal administration proceedings. The first insertion shall be made within 15 days of the date of the order setting the time. In addition to the foregoing, if the decedent was at the time of death or at any time prior thereto a patient or inmate of any state

shows that George's Shopping Center's account was credited with $225.00, reducing the amount owed to $5,610.85. In its January 31, 1980 claim, Schweiger explained that according to that statement, the current claim was for $5,610.85.

or county hospital or institution, notice in writing of the time within which creditors may present their claims and of the time when the claims will be examined, shall be sent by registered or certified mail to the department of health and social services and the county clerk of the county of legal settlement not less than 30 days before such examination, upon such blanks and containing such information as the department may provide.[3]

On appeal, Dobrila argues that the time limit set in secs. 859.01(1) and 859.05, Stats., for filing claims against an estate are absolute and that the trial court was without authority to permit claims to be filed later. We disagree with this unduly restrictive view of the trial court's power. Our supreme court long ago affirmed that probate courts have "all . . . jurisdiction, both legal and equitable, unless expressly reserved, necessary to the due administration of the estates of deceased persons . . . ."[4] "While the county courts derive their powers from the statutes, they have plenary jurisdiction in all matters of administration, settlement, and distribution of estates of decedents, and their jurisdiction is in considerable part concurrent with that of courts of equity."[5] Accordingly,

---

[3] The constitutionality of requiring only notice by publication under this section was upheld by the Wisconsin Supreme Court in *In re Estate of Fessler: William B. Tanner Co. v. Estate of Fessler*, No. 79–645, slip op. (March 3, 1981), on the ground that the due process notice rules of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), are not applicable here. The court explained that "the *Mullane* rule is limited to those rights or interests jeopardized by judicial or quasi-judicial actions or proceedings[,]" *Estate of Fessler, supra*, slip op. at 9, and that sec. 859.01, Stats., being essentially a statute of limitations, bars claims "independently of any adjudicatory process." *Id.* It is the passage of time, and not the action of a judicial body, that extinguishes creditors' rights under secs. 859.01, 859.05 and 859.07. *Id.*

[4] *Brook v. Chappell*, 34 Wis. 405, 411 (1874).

[5] *Laabs v. City of Milwaukee*, 236 Wis. 192, 202, 294 N.W. 1, 5 (1940), (quoting *Will of Robinson: Henneman v. Robinson*, 218 Wis. 596, 603, 261 N.W. 725, 728 (1935)).

we determine that the trial court in this probate proceeding had the requisite equitable power to extend the time for filing claims where justice so required.

We also determine that where there is fraudulent conduct on the part of the personal representative which induces the creditors to forego the proper filing of their claims, the personal representative is estopped from asserting the notice of claim statute to bar those creditors' claims.

A personal representative of an estate is similar to a trustee of a trust, and owes fiduciary duties to the creditors as well as the beneficiaries of the estate.[6] A personal representative is not required by statute, nor by his or her fiduciary duties, to personally contact all of the creditors of an estate and inform them of the time limit for filing claims against the estate. However, where a personal representative takes it upon himself or herself to contact creditors and assure them of his or her intention to satisfy delinquent claims as soon as possible, as was done here, it is incumbent upon the personal representative to also inform the creditors of the need, nevertheless, to file their claims against the estate and the deadline for such filing.[7] This duty arises as a result of the personal representative's own act of contacting creditors and informing them that their claims would be paid. The failure to inform the creditors of the need to file their claims within the time limit constituted, as the trial court concluded, passive fraud and estopped the personal representative from asserting the deadline for filing claims as a bar to the claims of the defrauded creditors.

Our holding in this case is rooted in the broad principle that a wrongdoer should not be permitted to benefit from

---

[6] *McKeigue v. Chicago & N.W. Ry.*, 130 Wis. 543, 546–47, 110 N.W. 384, 385 (1907) *cited recently in In re Estate of Meister: Wolf v. McAuliffe*, 71 Wis.2d 581, 595, 239 N.W.2d 52, 59 (1976).

[7] *See generally* 37 Am. Jur.2d *Fraud and Deceit* §149 (1968).

his or her own wrong. Technical arguments and factual distinctions between cases should not obscure the applicability of this basic maxim. This principle has been applied to foreclose the assertion of the statute of limitations defense:

One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.[8]

Passive or constructive fraud exists when there is suppression of a fact that should have been disclosed.[9]

In ordinary situations one may, legally if not morally, keep silent and profit by his adversary's ignorance. . . . But where there is a solemn duty to speak independently of coercion, and in judicial controversy as well, whether asked to speak or not, and there is a failure to speak, resulting in the enrichment of the wrongdoer and the impoverishment of the one to whom that duty is owing, there is a fraud of most serious nature . . . .[10]

Passive or constructive fraud has been utilized as a basis for modification or reversal of a prior order of a probate court, and statutory time limits have not prevented a probate court from vacating an order induced by such fraud.[11] We believe this type of fraud should also estop

[8] *Scarbourough v. Atlantic Coast Line R.R.*, 178 F.2d 253, 258 (4th Cir. 1949), *cert. denied*, 339 U.S. 919 (1950); *see also Peters v. Kell*, 12 Wis.2d 32, 44–46, 106 N.W.2d 407, 415–16 (1960); Annot., 43 A.L.R.3d 429 (1972).

[9] *See In re Estate of Kennedy: Steussy v. First Wis. Trust Co.*, 74 Wis.2d 413, 419, 247 N.W.2d 75, 78 (1976).

[10] *Laun v. Kipp*, 155 Wis. 347, 373, 145 N.W. 183, 192 (1914); *see also Hammes v. First Nat'l Bank & Trust Co.*, 79 Wis.2d 355, 368–70, 255 N.W.2d 555, 562 (1977).

[11] *In re Estate of Kennedy, supra* note 9, at 419, 247 N.W.2d at 78.

the assertion of the deadline for filing claims in circumstances such as we have here.[12]

Dobrila also argues that there was insufficient evidence to establish passive fraud. Passive fraud is established if there is a duty to disclose certain information, a failure to disclose, and detrimental reliance by the defrauded person.[13]

We have already explained that by virtue of the personal representative's duties, a duty to inform of the deadline for filing claims arose when Dobrila and the estate's attorney contacted the creditors and informed them that their claims would be paid. The other elements, failure to disclose and reliance, were established by the testimony of the only witness in this case, Short, Lane's treasurer.

Short testified about the letters sent by Dobrila and the estate's attorney assuring him that Lane's claim would be paid. At the time these letters were written, the deadline for the filing of claims against the estate had already been set. However, no mention of that fact is made in any of the letters. Short also testified that relying on Dobrila's and the estate's attorney's assurances that the claim would be paid, he did not pursue Lane's customary collection practice. The court found, based upon this evidence, that there was clear and convincing proof of fraud.[14] This finding is not against the

[12] *See Katz v. A. J. Ruhlman & Co.*, 69 Cal. App.2d 541, 159 P. 2d 426 (1945); *Davis v. Evans*, 132 So.2d 476 (Fla. Dist. Ct. App. 1961); *Burt v. Second Nat'l Bank*, 241 Mich. 216, 217 N.W. 71 (1928).

[13] *See Olson v. Skroch*, 182 Wis. 448, 452, 196 N.W. 767, 768 (1924); *Laun, supra* note 10, at 373, 145 N.W.2d at 192; *see also* 37 Am. Jur.2d *Fraud and Deceit* §§146, 223, and 225 (1968).

[14] This was the correct burden of proof to apply. *See First Nat'l Bank v. Scalzo*, 70 Wis.2d 691, 703, 235 N.W.2d 472, 478 (1975).

great weight and clear preponderance of the evidence and, therefore, will not be upset on review.[15]

The finding of fraud was sufficient to warrant the application of estoppel principles to prevent Dobrila from raising the defense of nonfiling of a claim within the time limit.[16]

*By the Court.*—July 8, 1980 order regarding Schweiger modified to show a claim of $5,610.85 instead of $5,835.-85, and, as modified, affirmed. July 9, 1980 order regarding Lane, affirmed.

---

[15] *See In re Estate of Reist: Giese v. Reist,* 91 Wis.2d 209, 218–19, 281 N.W.2d 86, 90 (1979).

[16] Although the court did not explicitly state that it was applying the doctrine of estoppel here, estoppel is implicit in its determination that, because of Dobrila's fraudulent conduct, the deadline for filing claims would be extended to permit the filing of Lane's and Schweiger's claims.