ESTATE OF PALMER: MARSHALL & ILSLEY BANK, Appellant, v. UNITED BANK OF MADISON, Successor Personal Representative of the Estate, Respondent.

*No. 494. Argued March 6, 1975.—Decided April 10, 1975.*
(Also reported in 227 N. W. 2d 680.)

For the appellant there were briefs by *Churchill, Duback & Smith*, attorneys, and *John D. Bird, Jr.*, of counsel, all of Milwaukee, and oral argument by *Mr. Bird.*

For the respondents there was a joint brief by *DeWitt, McAndrews & Porter, S. C.* of Madison for respondent United Bank & Trust of Madison and by *La Follette, Sinykin, Anderson & Abrahamson* of Madison for respondent Ruth Ann Smith, and oral argument by *Jack R. DeWitt* and *Shirley Abrahamson.*

CONNOR T. HANSEN, J. During his lifetime, Percy W. Palmer founded eight Wisconsin corporations, all generally engaged in the construction or construction-material business. In 1960, one of these companies, Prestressed Concrete Products Corp. (Prestressed) borrowed money from M & I. M & I required a guaranty from Percy W. Palmer and other members of the family to support this loan.

Also on May 2, 1968, Percy W. Palmer, Robert W. Palmer, Ray F. Palmer, Helen L. Palmer and John M. Palmer, signed a guaranty to M & I for past and future loans to Prestressed and to Hartland-Verona Gravel Company (Hartland-Verona), one of the Palmer companies.

Percy W. Palmer died May 30, 1968. Robert W. Palmer was appointed executor. July 17, 1968, in his capacity as executor, Robert executed the guaranty which produced this litigation. It extended to loans made by M & I to Palmer corporations both before and after the date of its execution.

In the proceedings before the trial court, M & I sought recovery under the guaranty for loans made to the Palmer

corporations both before and after its execution. On appeal, however, M & I seeks only to collect debts for loans made to the Palmer corporations prior to the death of Percy W. Palmer.

In early June, 1968, Jere D. Chapin, a M & I loan officer, met with Robert W. Palmer and John Multhauf, then the lawyer for the estate's personal representative, on one or two occasions. At that time, Robert W. Palmer requested M & I not to file a claim against the estate and told M & I the estate would give a guaranty.

In the proceeding before the trial court, Robert W. Palmer testified as to reasons why he offered M & I a guaranty by the estate in exchange for its promise not to file a claim against the estate. First, Robert wanted the corporations, not the estate, to pay off the debts. Second, Robert said he needed to maintain a good working relationship with M & I and he was afraid his ability to get loans from the bank in the future would be jeopardized if the bank filed a claim against the estate. Robert wanted the family corporations to be able to continue borrowing from M & I so that the corporations could continue to operate. At least three of the companies—Prestressed, Hartland-Verona, and Palmer Crushing, Inc.—reported in their financial statements in late 1967 or early 1968 that liabilities exceeded assets. Third, Robert admitted knowing that if M & I did not file their claim and it was not of record in the estate proceedings that his interest in the estate—$47\frac{1}{2}$ percent of the residuary estate—would seem larger because the estate would appear to be free of M & I's claim.

Chapin requested M & I's lawyer to prepare the guaranty, which he did and forwarded it to Multhauf. On July 17, 1968, Robert W. Palmer, as executor, signed the guaranty and it was sent to M & I.

The guaranty provided, in part:

"To induce Marshall & Ilsley Bank, a Wisconsin Banking Corporation, ('Bank') to forego filing a claim against

the Estate of P. W. Palmer, deceased, under his guaranty of loans made by Bank to Palmer Crushing Company, Inc., Prestressed Concrete Products Corp., and Hartland-Verona Gravel Corp.

"And to induce Bank to lend Palmer Crushing Company, Inc., Prestressed Concrete Products Corp. and Hartland-Verona Gravel Corp. further amounts as well as renew their existing loans.

"Now Therefore, the undersigned as the duly qualified and acting executor of the Estate of P. W. Palmer, deceased, promises to pay Bank, its successors and assigns, all loans, drafts, overdrafts, endorsements, accounts, checks, notes, interest, guaranties and all other direct or indirect indebtedness, obligations and liabilities of every kind and description, whether of the same or a different nature, now existing or owing or which may hereafter arise or be contracted or exist or become due or owing by the above corporations to said Bank, whenever the same or any thereof, or any part thereof, shall be due, including interest thereon and all costs, expenses and reasonable attorney's fees.

" . . .

"This is a continuing guaranty and . . . shall continue in force until the Bank releases the estate or obtains reasonable and adequate substitutes on this guaranty."

When Percy W. Palmer died on May 30, 1968, the loans outstanding to Palmer Crushing, Hartland-Verona, and Prestressed, totaled $199,158. None of the companies was then in default. At the time of the trial in 1972, Hartland-Verona and Prestressed were in default on their loans.

After Percy W. Palmer died, M & I made more loans to Palmer corporations and Robert W. Palmer had several meetings with officials from M & I.

In October, 1971, Robert W. Palmer admitted that he had misappropriated money from Palmer Crushing, one of the Palmer corporations, of which he was then president. Robert was indebted to Palmer Crushing in the amount of about $470,000 for the misappropriations. Robert resigned as president and director of Palmer

Crushing and he assigned to Palmer Crushing his share of the Percy W. Palmer and Esther M. Palmer estates to pay off the debt.

The judgment of the trial court determined that M & I was barred from recovering against the estate because it had failed to file a claim against the estate. The judgment further determined that the will of Percy W. Palmer, deceased, did not authorize Robert W. Palmer, as executor, to execute the guaranty on behalf of the estate.

*Issues.*

We consider the appellant raises the following issues on this appeal:

1. Does M & I's failure to file a claim against the estate preclude M & I from collecting on the basis of the guaranty from the estate debts due on loans made prior to the death of Percy W. Palmer?

2. Was Robert W. Palmer, as personal representative of the estate, authorized by the will to obligate the estate on the guaranty to pay off loans made to the three family corporations?

3. Is the United Bank, as successor personal representative of the estate, permitted to challenge and repudiate actions taken by the first personal representative, Robert W. Palmer?

4. Can M & I rely on the theory of promissory estoppel to require the estate to pay debts due on loans made to the Palmer corporations prior to the death of Percy W. Palmer?

The trial judge found that because M & I failed to file a claim against the estate it "is forever barred from recovering any sums from the estate which were loaned to the corporations prior to testator's death."

Sec. 313.08, Stats. 1967, provided:

"Statute of limitations. Every claim against a decedent, proper to be filed in probate proceedings in county court, which shall not, after notice given as required by sections 313.03 and 313.04, be filed within the time limited for that purpose, *shall forever be barred.*" (Emphasis added.)

The guaranty executed by Percy W. Palmer during his lifetime made the claim of M & I a contingent claim against the estate. Sec. 313.22, Stats. 1967.[1] It was one proper to have been filed against the estate.

Because a contingent claim is a proper claim to be filed in probate, under sec. 313.08, Stats. 1967, it is forever barred if not filed within the time limited for that purpose. Therefore, because M & I did not file its contingent claim, its claim against the estate based on either the guaranty of Percy W. Palmer or Robert W. Palmer, as executor, is forever barred pursuant to the provisions of the statute.

This statute of limitations cannot be waived. In *Estate of Lathers* (1934), 215 Wis. 151, 154, 155, 251

---

[1] Sec. 313.22, Stats. 1967, provided:

"313.22 **Contingent claims.** Contingent claims against a decedent's estate which cannot be allowed as debts shall, nevertheless, be presented to the court and proved, and they shall be embraced in a statement like that provided in section 313.06. The court may order the executor or administrator to retain in his hands sufficient estate to pay contingent claims when the same become absolute; or if the estate is insolvent, sufficient to pay a percentage thereof equal to the dividends of the other creditors."

Sec. 313.06, Stats. 1967, referred to in sec. 313.22, provided:

"313.06 **List of claims; judgment on; execution.** The court shall make a statement embracing lists of the claims presented against the decedent and those exhibited in offset and stating how much was allowed and how much disallowed in each case, together with the final balance, whether in favor of the creditor or the estate; and the same shall be signed by the judge, be recorded and stand as the judgment of the court. If the balance is in favor of the estate the payment thereof may be enforced by execution."

N. W. 466, 254 N. W. 550, the court said that the purpose of the nonclaim statute was to promote the speedy settlement of estates in the interest of the creditors, heirs and devisees, and to render certain the titles to real estate. The court said that in view of this purpose no one has the power to waive the provisions of this statute of limitations because if they could it would be within the power of anyone to waive provisions of law intended for the benefit of others. Applying the nonwaiver rule to the instant case, it means that neither M & I nor Robert W. Palmer, as executor of the estate, could waive the filing-of-claims requirement by executing the guaranty on July 17, 1968.

M & I contends that sec. 317.10, Stats. 1967, and the case of *Estate of Morgan* (1913), 152 Wis. 138, 139 N. W. 745, are authority for allowing the estate to pay their loans.

Sec. 317.10, Stats. 1967, provided:

**"Payment of unfiled claims.** Where an executor or administrator has, in good faith, paid claims against the estate without the claims having been filed, such payments may be allowed upon proof that they were just demands against the estate and were paid within the time limited for the presentation of claims. Notice that application will be made for such allowance shall be served as provided in section 324.18. Payment shall be allowed on a pro rata basis with other claims when the estate is insolvent."

Based on this statute, M & I argues that their loans to the Palmer corporations were supported by the personal guaranty of Percy W. Palmer, deceased, and were valid claims against his estate at the time of his death. Therefore, it follows that the guaranty executed by Robert W. Palmer, as executor of the estate, on July 17, 1968, before the time limitation for filing claims expired and before the final account of the executor had been settled, constituted payment pursuant to sec. 317.10, Stats. 1967.

This conclusion of M & I seems to be based on the theory that the guaranty constituted payment in good faith prior to the expiration of the time allowed for filing the claim.

In *Estate of Morgan* the executor owed the deceased's estate $1,365.02 on a note. The executor charged the deceased $975 for rent and services he rendered. Before the expiration of the time for presenting claims against the estate, he credited himself on the note for the amount of $975. One of the issues for the court was whether the crediting upon the note amounted to payment of the claim within the meaning of a statute similar to sec. 317.10, Stats. 1967. The court concluded that the crediting amounted to payment. *Morgan, supra,* page 142.

Neither sec. 317.10, Stats. 1967, nor the *Morgan Case, supra,* support the theory of M & I in the instant case. The guaranty, unlike the crediting in the *Morgan Case,* did not amount to payment.

M & I is, essentially, arguing that the guaranty of Robert W. Palmer, as executor, can be substituted for the claim. Under the facts of this case, it cannot be so substituted.

The trial judge determined that Robert W. Palmer, as executor, was not authorized by the will to make the guaranty of past and future loans on behalf of the estate; that because Robert was without authority to guaranty loans to corporations in which the estate held stock, any guaranty signed by him on behalf of the estate was unenforceable against the estate; and that since the claims of M & I were barred for its failure to file, the guaranty of Robert was in effect a loan to the Palmer corporations by the estate and served to increase the liabilities of the estate.

M & I argues, on appeal, that the will and both statutory and case law, empower the executor to settle, extend and promise to pay the debts of the Prestressed and Hart-

land-Verona corporations as those debts existed on the date of death of Percy W. Palmer. We find no statutory or authoritative case law which authorizes the personal representative to obligate the estate on a guaranty to new liabilities in the manner pursued by Robert W. Palmer, as executor, in the instant case.

The provisions of the will of Percy W. Palmer relevant to the issue of authority delegated to the executor are:

"FIRST: I direct the prompt payment of my just debts and the expenses of my funeral, my last illness, and the administration of my estate as soon after my decease as my Executor, hereinafter named, can conveniently do so.

". . .

"SEVENTH: I hereby grant to my Executor and trustee of my estate and the trusts herein created, and any successor or successors, the following rights, powers and discretions:

"(A) To carry on any business or undertaking in which I may be engaged at the time of my death, either as a sole trader or as a partner, hereby granting to my Executor and Trustee full authority to conduct such business or undertaking in the same manner that I might if I were living.

"(B) To invest and reinvest the corpus of my estate in such securities as it may deem necessary to the best interest of my estate, and in making such investment, or in retaining investments owned by me at the time of my death, my said Executor and Trustee shall not in any way be bound by the present or future law pertaining to the investment of trust funds. I hereby release and discharge my said Executor and Trustee from any and all liability arising from losses sustained in the investment of said trust estate not caused by the willful misconduct of said Executor and Trustee. Subject to the provisions of any contracts binding on my estate, made by me in my lifetime, I specifically authorize and empower my said Executor and Trustee to sell and dispose of any property, real or personal, or mixed, which I may own, or which my said Executor or Trustee may acquire, at such time, at such price, and upon such terms as it may in its discretion determine upon, and to that end I hereby au-

thorize and empower my Executor and Trustee to execute and deliver any necessary deeds, bills of sale, or other instruments of sale, assignment or conveyance or mortgage. And my said Executor and Trustee shall have the power and authority to pledge, mortgage, hypothecate any of the assets of my said estate.

"(C) To pay and discharge any liens, debts, and obligations existing on any assets of my estate, and to collect, satisfy, enforce, extend, settle, compound and compromise any and all liens, demands, obligations, mortgages and claims held by or asserted against my estate."

In arguing that the executor was empowered to settle, extend or promise the payment of debts existing when Percy W. Palmer died, M & I relies on the paragraphs "First" and "Seventh (C)" of the will. It argues that under the "First" paragraph the executor can pay the debts as soon as he can conveniently do so, and that under paragraph "Seventh (C)" the executor is empowered to pay the just debts of the decedent and to compromise, settle and extend those debts. M & I urges that "[a]t the very least, these powers apply to debt of the decedent incurred during his lifetime."

The will empowers the executor to pay and compromise or extend debts created prior to the death of Percy W. Palmer. But payment of those debts is not the issue. The issue is the validity of the purported guaranty which attempted to obligate the estate to pay debts for which a claim was not filed, and additionally, debts to be incurred in the future. The guaranty in this case created a new obligation of the estate. We are of the opinion that the will did not authorize the executor to create such obligations by the execution of the guaranty.

The power to create new liabilities was not authorized by the "First" paragraph of the will. We also conclude the guaranty was not authorized by paragraph "Seventh (C)" which empowered the executor to settle, extend or compromise demands and obligations asserted against

the estate. This provision does not authorize the executor to create new liabilities as was here accomplished when the guaranty was executed. We are of the opinion the will did not authorize the executor to execute the guaranty on behalf of the estate.

The guaranty executed by Robert W. Palmer, as executor, relates to debts of the Palmer corporations existing both before and after its execution. Nevertheless, M & I argues that if the guaranty is otherwise invalid, it is severable and that there is no reason not to hold the estate liable for the payment of debts to the extent they existed on the date of death of Percy W. Palmer.

The general rule as to severability was stated in *Simenstad v. Hagen* (1964), 22 Wis. 2d 653, 661, 126 N. W. 2d 529:

" 'A bargain that is illegal only because of a promise or a provision for a condition, *disregard of which will not defeat the primary purpose of the bargain,* can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. . . .' " (Emphasis added.)

There are several reasons why the guaranty cannot be considered severable so as to relate only to claims against the estate as of the date of death of the testator.

As previously stated, the guaranty cannot be used as a substitute for the filing of a claim.

If the provisions of the guaranty were to be considered severable it would defeat the primary purpose of the guaranty. Robert W. Palmer testified that his purpose in not having M & I file its claim against the estate and in attempting to obligate the estate to guaranty the loans was to maintain good will with M & I and enable the corporations to get future loans. A primary purpose of the guaranty was directed to future activities of the corporations. M & I already had guaranties signed by Percy W. Palmer upon which it could have filed claims

against the estate to recover debts owed at the time of his death. To sever the guaranty in such a way as to protect only such loans would defeat the primary purpose of the guaranty.

The guaranty covers loans and obligations "now existing or owing or which may hereafter arise or be contracted or exist or become due or owing." It was executed July 17, 1968; the testator died May 30, 1968. Thus, the guaranty distinguished between debts owed on the date the guaranty was executed and debts thereafter arising. M & I does not want to sever the guaranty as of the date of execution. Rather M & I suggests a new distinction, that is, debts guaranteed by the testator as of the date of his death. Even if the guaranty were severable, and we believe it is not, it could not be severed on the basis of a distinction not contained in the document.

M & I also argues that even if the guaranty was invalid, M & I should be able to recover its claim from the estate and the estate should then recover the amount from Robert W. Palmer. We are not persuaded by this argument.

The estate contends that M & I cannot recover from the estate because at the time Chapin had the guaranty drawn up for the bank, Chapin had a copy of the will which set out the executor's powers. The bank also had copies of the most recent financial statements of Palmer Crushing, Prestressed and Hartland-Verona, which showed that the liabilities of each company exceeded its assets. Chapin also knew that the estate by means of shares and notes was involved with the Palmer companies to an extent of about $500,000. The estate argues that armed with this information, M & I knew or should have known that Robert W. Palmer, as an executor, was not authorized to execute the guaranty on behalf of the estate.

The estate had two trust officers testify to the policies of their institutions when they are personal representa-

tives and questions arise as to the authority of the personal representative or the best interests of the estate. George Kroncke, Jr., senior vice-president of the First Wisconsin National Bank in Madison, said that his bank as a personal representative would not bind the estate to guaranty the loans to corporations without first getting court approval. He said that if a question arose as to the authority of the personal representative to act or to the best interests of the estate, his bank as personal representative would obtain court approval or the approval of the beneficiaries before taking action.

Louis D. Gage, vice-president and senior trust officer of Merchants & Savings Bank in Janesville knew of no instance where his bank as personal representative bound the estate to guaranty the loans to a corporation without first obtaining court approval. He also testified that if there was a question as to the authority of the personal representative or to the best interests of the estate his bank as personal representative would obtain court approval or the consent of interested parties before taking action.

In this case no attempt was made to get court approval for the executor to execute the guaranty and all the beneficiaries did not and have not approved its execution.

In conclusion, the claim of the bank is barred because it was not filed against the estate; the guaranty cannot be considered as a substitute for the filing of the claim; the executor was not authorized to execute the guaranty; and the provisions thereof are not severable so as to allow the claims.

We have considered the other arguments advanced by the appellant. However, because of the disposition of this case, it is not necessary to discuss them.

*By the Court.*—Judgment affirmed.

DAY, J., took no part.