IN the MATTER OF the ESTATE OF George LECIC, Deceased:
Dobrila LECIC, Personal representative of the Estate
of George Lecic, Deceased, Appellant-Petitioner,

v.

THE LANE COMPANY and Schweiger Industries,
Respondents.

Supreme Court

*No. 80–1489. Argued November 3, 1981.—
Decided December 1, 1981.*

(Also reported in 312 N.W.2d 773.)

For the appellant-petitioner there was a brief (in court of appeals) by *William T. Schmid* and *Jerome E. Randall* of Wauwatosa, and oral argument by *Mr. Schmid*.

For the Lane Company there was a brief (in court of appeals) by *Robert L. Mann* and *Kohner, Mann & Kailas, S.C.,* of Milwaukee, and oral argument by *Robert L. Mann*.

For the Schweiger Industries there was a brief (in court of appeals) by *Kevin D. Mathews* and *Howard, Peterman & Eisenberg, S.C.*, of Milwaukee, and oral argument by *Mr. Mathews.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of a decision of the court of appeals which affirmed orders of the circuit court for Milwaukee county, Elliot N. Walstead, reserve circuit judge.[1] The circuit court concluded that the personal representative of the estate of George Lecic, deceased, had fraudulently induced certain creditors of the estate to forgo filing claims within the prescribed statutory time limit; that the time for filing claims for those creditors who had been defrauded should be extended to include the date on which the defrauded creditors filed their claims; and that the personal representative was estopped from asserting the statutory time limit against the defrauded creditors.   The circuit court ordered that the claims of the defrauded creditors be deemed properly and timely filed.   The court of appeals modified the amount of one of the claims and affirmed the orders of the circuit court.   We reverse the decision of the court of appeals.

The facts are undisputed.   The decedent, George Lecic, died on April 30, 1978.   The decedent was the sole proprietor of a furniture store known as George's Shopping Center.

On May 4, 1978, pursuant to sec. 867.07, Stats. 1979–80, Dobrila Lecic, the widow, was, without notice of hearing, appointed Special Administrator of the Estate by the circuit court exercising probate jurisdiction.   The order appointing Mrs. Lecic Special Administrator granted her the power: "to conserve and manage the estate and to conduct the business of the decedent pending the

appointment of the Personal Representative." The circuit court, pursuant to sec. 859.05, Stats., fixed August 4, 1978, as the final day for filing claims against the estate of the decedent. The circuit court ordered that notice of the time for filing claims and the hearing on claims be published, and such notice was published on May 9, 16, and 23 of 1978.

On May 5, 1978, Special Administrator Lecic sent a letter to all of the suppliers of George's Shopping Center, including the respondents herein, the Lane Company and Schweiger Industries. Special Administrator Lecic's letter informed the suppliers of the death of George Lecic and of her appointment as Special Administrator to "conduct the business of George's Shopping Center." The letter stated: "I will as Special Administrator be responsible for the continuation of the business and the payments of all accounts payable."[2]

---

[2] The letter states:

"May 5, 1978

"TO OUR SUPPLIERS:

"Please be advised that my husband George Lecic of George's Shopping Center, 1401 W. Mitchell St., Milwaukee, Wis died April 30, 1978.

"I Dobrila Lecic, surviving wife have been appointed by the Milwaukee County Court as Special Administrator to conduct the business of George's Shopping Center, as of ——— [sic].

"I will as Special Administrator be responsible for the continuation of the business and the payments of all accounts payable.

"A copy of the Court Appointment is enclosed.

"We will continue with the same store staff sales and accounting staff. I have authorized Helen Grzeszkiewicz, Bookkeeper to purchase necessary merchandise for the store.

"I have retained Blanche L. Swerdloff of 152 W. Wisconsin Ave. as my attorney in the matter of the estate of my deceased husband.

On June 12, 1978, Mrs. Lecic was appointed Personal Representative of her husband's estate. On July 13, 1978, Mrs. Lecic received a mailgram from Lane which said that it was "imperative that [they] receive payment." The attorney for the estate replied by letter dated July 17, 1978, stating: "It is our intention to pay the delinquent account as soon as money becomes available. We shall keep you advised." By letter dated July 28, 1978, Lane wrote Mrs. Lecic's attorney advising her that the company would not approve further orders while the account was delinquent. Although correspondence after the filing date may have little if any bearing on whether Lane was fraudulently induced to forgo filing a claim before the deadline, there was further correspondence between Lane and the estate after the August 4, 1978 deadline for filing claims. On August 18, 1978, Lane wrote the attorney asking when payment could be expected. On August 23, 1978, the attorney responded that Lane's invoices would be paid as soon as money became available. It appears that Schweiger may have received only the initial May 5, 1978 letter from Mrs. Lecic in her capacity as Special Administrator.

Neither Lane nor Schweiger filed their claims by the August 4, 1978 deadline.[3] On February 23, 1979,

---

"If you have any further questions, please address me at the store address, 1401 W. Mitchell St., Milwaukee, Wis 53204 (phone 414-384-7948)

"Respectfully,
". . .

---

"Dobrila Lecic (Debbie)"

[3] For the purposes of this opinion we assume that all claims before us are pre-death claims against the decedent. The record is not clear as to whether the claims by Schweiger and Lane are in fact entirely pre-death claims. Debts incurred by the estate after death are not limited by sec. 859.01, Stats. 1977.

Schweiger petitioned the circuit court for an extension of the time for filing claims, and with the permission of the circuit court it filed a claim on January 31, 1980. The grounds for the extension requested by Schweiger are not spelled out clearly, but the petition appears to allege that some type of fraud was committed by Mrs. Lecic. On July 12, 1979, Lane petitioned the circuit court for an extension of the time for filing claims, and with the permission of the circuit court it filed a claim on February 21, 1980. Lane's petition is more specific than Schweiger's and alleges that Mrs. Lecic's letter as special administrator dated May 5, 1978, and the letter from the personal representative's attorney dated July 17, 1978, fraudulently induced Lane to forgo filing its claim on or before August 4, 1978.

At the hearing on Lane's and Schweiger's claims, the principal witness was the treasurer of the Lane Company. He testified that when Lane receives notice that one of its debtors has died it generally turns that account over to a collection agency within 30 days if it has not received any money. He further testified that because of the letters from the Special Administrator and from the attorney for the estate, Lane did not turn the account over to a collection agency, did not file a claim before August 4, 1978, and did not seek legal advice about the probate laws of Wisconsin.

The circuit court ruled that when Mrs. Lecic wrote the May 5th letter to creditors as special administrator she had a duty to inform the creditors of the August 4, 1978 deadline for filing claims. The circuit court held that "her failure to notify the creditor of the deadline [for filing claims] constituted passive fraud . . . . [S]he had a duty not to remain silent under these circumstances." The circuit court further found that Lane acted in reliance on the letter and expected the claim to be

paid without its doing anything further. The circuit court also concluded that the creditor was misled by the correspondence of the personal representative's lawyer. This "passive fraud," the circuit court held, was grounds to permit Lane to file its claim.[4] The circuit court based its conclusion that fraud by the personal representative will operate to estop the personal representative from asserting the non-claim statute as a defense or will empower the circuit court to extend the statutory time for filing claims on decisions of this court which involve the probate court's powers in the event of fraud on the

[4] The trial court issued this decision from the bench:

"Time for filing claims expired August 4, 1978. The court is of the opinion that Dobrila Lecic at the time she wrote the letter of May 5, 1978 to the creditor had a duty to inform the creditor that the time for filing claims expired on August 4, 1978. Her failure to notify the creditor constituted passive fraud. A person acting in the capacity of Dobrila Lecic at the time had not only a duty not to misrepresent but she had a duty not to remain silent under these circumstances. That duty was emphasized by further correspondence which merely put her upon notice that the creditor was acting in reliance upon her previous statement and expected the claim to be paid without anything further being done on the creditor's part.

"The court is convinced by clear and convincing testimony that the creditor was mislead [sic] by the letter of May 5, 1978 and subsequent letters up to the date of August 4, 1978, the last date for the filing of claims. That the creditor was mislead [sic]; that as a result of this misleading by failure to speak, the creditor acted in reliance upon the statement and representations made by Dobrila Lecic, and the attorney [for the estate] and did not file its claim, and that but for such statement so made the creditor would have taken appropriate action through its collection agency and would have filed its claim within the time limited.

"Accordingly, the court extends the time for filing claims to permit the filing of this claim, and the claim as filed is in the amount of $7,136.04."

The parties agreed that the proof as to the Schweiger claim would be the same as the proof as to the Lane claim and that the testimony in the Lane case could stand for the Schweiger case.

court.[5] The case at bar, however, is not a case of fraud on the court.

The court of appeals affirmed the orders of the circuit court, concluding that the personal representative had committed passive fraud and was estopped from asserting the defense that the claims were not filed in a timely fashion. The court of appeals explained this holding as follows:

"A personal representative of an estate is similar to a trustee of a trust, and owes fiduciary duties to the creditors as well as the beneficiaries of the estate. A personal representative is not required by statute, nor by his or her fiduciary duties, to personally contact all of the creditors of an estate and inform them of the time limit for filing claims against the estate. However, where a personal representative takes it upon himself or herself to contact creditors and assure them of his or her intention to satisfy delinquent claims as soon as possible, as was done here, it is incumbent upon the personal representative to also inform the creditors of the need, nevertheless, to file their claims against the estate and the deadline for such filing. This duty arises as a result of the personal representative's own act of contacting creditors and informing them that their claims would be paid. The failure to inform the creditors of the need to file their claims within the time limit constituted, as the trial court concluded, passive fraud and estopped the personal representative from asserting the deadline for filing claims as a bar to the claims of the defrauded creditors." 101 Wis. 2d at 721.

Furthermore, the court of appeals, on *Estate of Kennedy,* 74 Wis. 2d 413, 419, 247 N.W.2d 75 (1976), a case involving fraud on the court, and relying on cases from other jurisdictions, rejected the estate's argument that the time limit prescribed by the statutes for filing claims against an estate is absolute and that the circuit

[5] *See Estate of Kennedy,* 74 Wis. 2d 413, 419, 247 N.W.2d 75 (1976); *Estate of Bailey,* 205 Wis. 648, 655, 238 N.W. 845 (1931); *Estate of Staab,* 166 Wis. 587, 592, 166 N.W. 326 (1918).

court had no authority to extend the time for filing claims.

Because we hold that Mrs. Lecic did not commit passive fraud, either as special administrator or as the personal representative, we do not reach the dual issue of whether, in the event there was fraud, the estate may be estopped from asserting the defense of the non-claim statute or whether the circuit court has the authority to extend the time for filing claims beyond the original date. Even though we do not reach this issue we note that there appears to be a conflict of authority in the states as to whether fraud by the personal representative is ground for estopping the estate from asserting the defense of the non-claim statute or the court's extending the time for filing claims. In some states, the courts have held that fraud does not estop the executor from asserting the defense that the claim was not filed on time.[6] In other states, the courts have reached the opposite result. In these states a statutory provision allows payment of late claims in cases of hardship or the courts have relaxed the rule of strict enforcement of the nonclaim statute where the creditor was, by reason of misrepresentation, lulled into not filing.[7]

---

[6] In *Vanderpool v. Vanderpool*, 48 Mont. 448, 138 P. 772, 774 (1914), the Montana Supreme Court held that even the personal representative's "misleading statement, his assurances or his conduct which induces a creditor to omit compliance with the statute, will not operate to estop him from contesting the claim upon the ground of noncompliance."

*See also Lowry v. Crandall*, 52 Ariz. 501, 83 P.2d 1003, 1005 (1938); *Ray v. Rambaud*, 103 Ariz. 186, 438 P.2d 752, 756 (1968).

Professor MacDonald, 2 *Wisconsin Probate Law* sec. 9.70, p. 35 (1973), concludes that "under present statutes . . . the court has no authority to extend the time [for filing claims].

[7] *See, e.g., In re Rubin's Estate*, 120 N.J. Eq. 554, 187 A. 913 (1936); *Katz v. A.J. Ruhlman & Co.*, 69 Cal. App. 2d 541, 159 P.2d 426 (1945); *Burt v. Second Nat. Bank of Saginaw*, 241 Mich. 216, 217 N.W. 71 (1928); *North v. Culmer*, 193 So. 2d 701 (Fla. Ct. App 1967).

Our discussion of passive fraud begins with the Wisconsin non-claim statute which expressly provides that claims not filed within the statutory time period are forever barred against the estate, the personal representative, and the heirs and beneficiaries of the estate.

Sec. 859.01(1), Stats. 1977, provides:

"(1) Except as provided in sub. (3) and s. 859.03, all claims against a decedent's estate including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims."

The bar of sec. 859.01(1) is reinforced by two other statutes. Sec. 859.05, Stats. 1977, further recognizes that a claim not timely filed shall be forever barred:

"859.05 **Time to file.** Upon the filing of an application for administration, the court or the probate registrar under informal administration proceedings shall by order fix the time within which claims against the decedent shall be presented or be forever barred. The time shall be 3 months from the date of the order."

Sec. 859.47, Stats. 1977, limits allowance of payments of unfiled claims to the following circumstances:

"If a personal representive has in good faith paid unfiled claims against the estate, the payments may be allowed upon proof that they were just demands against the estate and that they were paid within the time limited for the presentation of claims, or at any time with the consent of the heirs or beneficiaries affected by the payment. Notice that application will be made for such allowance shall be given under s. 879.03. Payment shall be allowed on a pro rata basis with other claims of the same class if the estate is insolvent."

It has been long been recognized in this state that the non-claim statute is applied more rigorously than other

statutes of limitation, *Barry v. Minahan*, 127 Wis. 570, 576, 107 N.W. 488 (1906), and that a personal representative has no authority to waive the non-claim limitation. *Estate of Palmer*, 68 Wis. 2d 101, 107, 108, 227 N.W.2d 680 (1975); *Estate of Lathers*, 215 Wis. 151, 154–155, 251 N.W. 466, 254 N.W. 550 (1934). *See also* Comment, *Conflict of Laws: Effect of Time Limitations on Proof of Claims in Probate*, 1958 Wis. L. Rev. 451, 458–460. The non-claim statute requires nonresident claimants as well as resident claimants to file within the statutory time period to protect their claims. *Estate of Fessler*, 100 Wis. 2d 437, 450–451, 302 N.W.2d 414 (1981); *Davis v. Davis*, 137 Wis. 640, 119 N.W. 334 (1909); *Fields v. Estate of Mundy*, 106 Wis. 383, 82 N.W. 343 (1900); 2 MacDonald, *Wisconsin Probate Law*, sec. 9.31 (1972).

Lane and Schweiger attempt to avoid the bar of secs. 859.01 and 859.05 by arguing that Mrs. Lecic as special administrator and personal representative committed passive fraud, that is, she fraudulently induced the creditors to forgo filing their claims before August 4, 1978, by failing to advise them of their obligation to file their claims, and that the estate is thereby estopped from asserting the statutory bar against the creditors' claims. Although the parties' briefs and the opinions of the circuit court and the court of appeals use the term passive fraud, we shall use the more commonly used terms, namely misrepresentation, misrepresentation by nondisclosure, fraud or fraudulent nondisclosure, to refer to the tort alleged to have been committed by Mrs. Lecic.

Generally the elements of the tort of misrepresentation are that the representation made by the defendant is of a fact; the representation of fact is untrue; and the plaintiff believes such representation to be true and relies thereon to his detriment. *Whipp v. Iverson*, 43 Wis.

2d 166, 169–170, 168 N.W.2d 201 (1969).[8] In the case at bar, the creditors do not assert the first two elements of the tort, namely that Mrs. Lecic made a representation of fact and that the representation was untrue. Instead, the misrepresentation or fraud alleged in the case at bar is one of omission, *i.e.*, that Mrs. Lecic failed to inform the creditors that in order to preserve its claim the creditor must file the claim within the statutorily prescribed period.

The general rule is that silence, a failure to disclose a fact, is not misrepresentation unless the nondisclosing party has a duty to disclose that fact. In *Southard v. Occidental Life Ins. Co.*, 31 Wis. 2d 351, 359, 142 N.W. 2d 844 (1966), we explained the duty to disclose as follows:

"A person in a business deal must be under a duty to disclose a material fact before he can be charged with a failure to disclose. Restatement, 3 Torts, p. 117, sec. 551 (1), states the rule as follows: 'One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of

[8] We assume that the respondents are asserting that the nondisclosure was intentional. In fact, neither the respondents nor the circuit court nor the court of appeals have specified whether the alleged fraud is intentional misrepresentation, negligent misrepresentation, or strict responsibility. The distinctions between these three types of misrepresentation are set forth in *Ollerman v. O'Rourke Co. Inc.*, 94 Wis. 2d 17, 288 N.W.2d 95 (1980), and we need not elaborate here. The failure to identify what type of fraud is being alleged is only one of the inadequacies in the record before us. We have enough information, however, to determine that there was no fraudulent misrepresentation here.

We assume without deciding that in the case at bar the statement of intention to pay is a statement of fact for purposes of misrepresentation. *See* Prosser, *Law of Torts* sec. 109, p. 728 (1971); 3 Restatement (Second) of Torts, secs. 530, 544 (1977).

the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.' "

*See also Ollerman v. O'Rourke,* 94 Wis. 2d 17, 26, 288 N.W.2d 95 (1980).

The question presented, then, is whether Mrs. Lecic had a duty to disclose to the creditors that the time during which claims were to be filed ended on August 4, 1978, and that filing the claim was necessary to protect the claimant. The question of legal duty to disclose is a question of law. *Ollerman v. O'Rourke, supra,* 94 Wis. 2d at 27.[9]

---

[9] Restatement (Second) of *Torts,* sec. 551(2) (1977), sets forth the conditions under which a party has a duty to use reasonable care to disclose the matter in question as follows:

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

"(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

"(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

"(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

"(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

"(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

Secs. 551(2)(a) and (b) seem to be the only provisions potentially applicable here.

Sec. (a) is simply a restatement of the general rule that there may be a duty to disclose based on a fiduciary relationship. We

The parties concede that neither the statutes nor the federal and state constitutions require the estate to give notice personally to known creditors of the estate of the filing requirements for claims or of the time during which claims must be filed. *Estate of Fessler,* 100 Wis. 2d 437, 445, 302 N.W.2d 414 (1981). The parties concede that the only duty the law imposes on the estate to advise the creditors of the statutory procedure for filing claims is to publish notice pursuant to sec. 859.07, Stats. 1977,[10] which was done in the instant case. Thus, as the court of appeals aptly pointed out, Mrs. Lecic had no statutory duty to contact personally all of the creditors of the estate and inform them personally of the time limit for filing claims against the estate. *Es-*

conclude that the mere relationship of the special administrator or personal representative to the creditors creates no duty to disclose and that the communication *per se* between the estate and the creditors creates no duty to personally inform the creditors of the filing date. More important to the case at bar, however, is sec. (b). Were the communications partial, incomplete, erroneous or ambiguous so that they were misleading?

[10] "859.07  **Notice; publication.** Notice of the time within which creditors may present their claims and of the time when the claims, as set by the court or probate registrar under informal administration proceedings, will be examined and adjusted by the court shall be given by publication, under s. 879.05(4), and may be given with the notice for granting letters. No date for examination and adjustment need be given in informal administration proceedings. The first insertion shall be made within 15 days of the date of the order setting the time. In addition to the foregoing, if the decedent was at the time of death or at any time prior thereto a patient or inmate of any state or county hospital or institution, notice in writing of the time within which creditors may present their claims and of the time when the claims will be examined, shall be sent by registered or certified mail to the department of health and social services and the county clerk of the county of legal settlement not less than 30 days before such examination, upon such blanks and containing such information as the department may provide."

*tate of Lecic,* 101 Wis. 2d at 721. Notice of the August 4, 1978 deadline for filing claims was published in the newspaper on May 9, 16, and 23, 1978, and Lane and Schweiger were thereby afforded the notice to which they were entitled under the statutes.

Accordingly, if Mrs. Lecic has a duty to disclose in the case at bar, it arises from her activities. The creditors argue that a duty to disclose arose when the special administrator and the personal representative corresponded with them. We must therefore scrutinize Mrs. Lecic's communications with the creditors closely to determine whether they might have given rise to the duty to disclose.

The court of appeals held that the written communications to the creditors by the special administrator and the estate's attorney, which we described previously, informing the creditors that their claims would be paid did create a duty to disclose to those creditors the deadline for filing claims and the effect of non-filing. The court of appeals based its holding on two theories: The court of appeals reasoned that once there is a personal communication by the special administrator or personal representative, the special administrator and the personal representative have a fiduciary duty to the creditors to disclose information about filing claims. The court of appeals further reasoned that the communication in the case at bar by the special administrator and the personal representative was partial and ambiguous so that the special administrator and the personal representative had a duty to disclose information about filing claims to prevent the communication from being misleading.

We shall consider first Mrs. Lecic's letter to the creditors of the estate as special administrator and then her letter as personal representative to determine wheth-

er either created a duty to disclose the filing information.

A special administrator owes fiduciary duties to the creditors as well as to the beneficiaries of the estate. *Cf. Estate of Meister,* 71 Wis. 2d 581, 595, 239 N.W.2d 52 (1976) ; *McKeigue v. Chicago & N.W. R.R.,* 130 Wis. 543, 546–547, 110 N.W. 384 (1907) ; Henderson, 2 *Bancroft's Probate Practice sec.* 339 (2d ed. 1950). To say that a special administrator has fiduciary obligations to creditors is not very helpful, however. Fiduciary duties are not constants. The existence of and the nature of a fiduciary duty depends upon the nature of the relationship between the parties and upon public policy as set forth in the statutes and common law. Our legislature has provided that the powers and duties of a special administrator are only those specifically granted by order of the court.[11] In the present case the order limited Mrs. Lecic's powers. Mrs. Lecic's powers were "to conserve and manage the estate and to conduct the business of the decedent pending the appointment of the Personal Representative." As special administrator and as a fiduciary to the creditors, Mrs. Lecic was required to carry out these tasks in good faith and with reasonable

[11] "867.17 **Powers, duties and liabilities of special administrator.** "A special administrator who is appointed without notice of hearing shall have only those powers and duties that are specifically granted to him by order of the court. The court may, following a hearing on notice to or waiver of notice by all interested parties, grant the special administrator by general order the same powers, duties and liabilities as a personal representative, except as expressly limited by the order of the court. By order the court may expressly grant him powers and impose duties in addition to those granted by statute to personal representatives as may be necessary to accomplish the purpose for which he is appointed."

*See also* 1 MacDonald, *Wisconsin Probate Law,* secs. 7.120 and 7.370 (1972).

care. Her fiduciary duties required no more, even when she personally contacted the creditors.

We can find no authority that the special administrator has a fiduciary duty to disclose to creditors information about filing claims in the decedent's estate merely because the special administrator corresponds with the creditors about continuing the business. We hold that the mere fact that there was correspondence between the special administrator and the creditors about their accounts payable did not raise a fiduciary duty on the part of the special administrator to disclose information about the filing of claims against the estate. To hold otherwise would create the anomalous situation of deterring any communication between the estate and creditors. Certainly it is to the creditors' benefit to receive personal notice of the decedent's death as is provided in any correspondence between a special administrator of the estate of the deceased and a creditor.

We must next inquire as to whether Mrs. Lecic's written communication that "I will as Special Administrator be responsible for the continuation of the business and the payments of all accounts payable" was a partial or ambiguous statement which required her to disclose to the creditors information about filing claims so as to prevent the written communication from being misleading. 3 Restatement (Second) of *Torts,* sec. 551 (2)(b) (1977).[12] We think not. The letter was not a

---

[12] *See* sec. 551(2)(b), Comment *g,* 3 Restatement (Second) of Torts (1977), which describes partial or incomplete statements as follows:

"*g.* A statement that is partial or incomplete may be a misrepresentation because it is misleading, when it purports to tell the whole truth and does not. (See sec. 529.) So also may a statement made so ambiguously that it may have two interpretations, one of which is false. (See secs. 527, 528.) When such a state-

partial or ambiguous statement of the facts. The letter was a full explanation of Mrs. Lecic's responsibility as special administrator, namely to conserve and manage the estate and to carry on the business of the decedent pending the appointment of the personal representative. Nor was the letter misleading. The letter did not contain an express or implied promise to pay any specific debts—it merely disclosed Mrs. Lecic's power and responsibility to pay accounts payable, a power necessary to continue the business. The letter did not expressly or impliedly indicate which accounts she was responsible for, those arising before or after she became special administrator. The letter did not state that the creditors should or should not file claims. No one, especially business parties such as Lane and Schweiger, could reasonably have been led by these statements to believe that they need not file claims for debts existing at the time of death. There is some evidence that at least respondent Schweiger understood that the letter of the special administrator referred to accounts payable arising after the date of death. In its February 23, 1979 petition for extension of time to file claims, Schweiger alleged the following:

"13. Dobrila Lecic advised these same creditors in writing, dated May 5, 1978, that she had been appointed special administrator of this estate and that she, as special administrator, would continue to operate George's Shopping Center, and she further assured these creditors that their bills for merchandise *subsequently delivered would be paid.*" (Emphasis added.)

---

ment has been made, there is a duty to disclose the additional information necessary to prevent it from misleading the recipient. In this case there may be recovery either on the basis of the original misleading statement or of the nondisclosure of the additional facts."

*See* also 3 Restatement (Second) of Torts secs. 527 (Ambiguous Representation), 528 (Representation Erroneously Expressed), and 529 (Representation Misleading Because Incomplete) (1977).

Apparently Schweiger understood Mrs. Lecic's letter as being merely a statement that she would continue the business and that she, as special administrator, would pay the debts incurred while she was running the business. In light of the powers and duties of a special administrator as compared to those of a personal representative, Schweiger's interpretation of the letter in the petition is the only reasonable interpretation. We conclude that the special administrator's communication of May 5, 1978, with creditors of the business who might be creditors of the decedent, was not a partial or ambiguous statement which comprised a duty to inform the creditors of the deadline for filing claims against the estate or of the necessity for filing claims.

We now consider whether a duty to disclose arose from the letter of the attorney for the estate to the creditors. Mrs. Lecic was appointed personal representative of the estate on June 12, 1978. In response to a mailgram that Lane had sent demanding payment, on July 28, 1978, the attorney for the personal representative[13] wrote to Lane stating that "it is our intention to pay the delinquent account as soon as money becomes available." Although the letter was written by the attorney for the personal representative, we treat it as the letter of Mrs. Lecic in her capacity as personal representative. There is no assertion that the attorney had no authority to act for Mrs. Lecic. *See* 1 MacDonald, *Wisconsin Probate Law*, sec. 7.260 (1972).

Our court has recognized that a personal representative like a special administrator owes fiduciary duties to the creditors as well as to the beneficiaries of the

[13] It appears that respondent Schweiger received only the May 5, 1978 letter from Mrs. Lecic in her capacity as special administrator and did not receive any communication from the personal representative or the attorney for the estate.

estate.[14] Again, what those fiduciary duties are depends upon the nature of the relationship and upon public policy as expressed in the statutes and common law. The statutory duties of the personal representative are set forth in ch. 857, Stats.[15] Sec. 857.03 sets forth the duties of the personal representative as follows:

"857.03 The personal representative shall collect, inventory and possess all the decedent's estate; . . . collect all income and rent from decedent's estate; manage the estate and, when reasonable, maintain in force or purchase casualty and liability insurance; contest all claims except claims which the personal representative believes are valid; pay and discharge out of the estate all expenses of administration, taxes, charges, claims allowed by the court, or such payment on claims as directed by the court; render accurate accounts; make distribution and do any other things directed by the court or required by law."

Of course, the personal representative must perform these tasks with good faith and reasonable care.

As we have stated previously, the personal representative has no statutory or common law duty to inform creditors personally of the deadline for filing claims. Therefore, again we must look to the acts of the personal representative in the case at bar to determine whether they create the duty to disclose information about filing claims.

As discussed above with respect to the letter of the special administrator we can find no authority that the

---

[14] *Estate of Meister*, 71 Wis. 2d 581, 595, 239 N.W.2d 52 (1976); *McKeigue v. Chicago & N.W. R.R.*, 130 Wis. 543, 546–547, 110 N.W. 384 (1907).

[15] On the duties of personal representatives, *see also*, 1 MacDonald, *Wisconsin Probate Law*, secs. 7.250 *et seq.* 1972; Henderson, 2 *Bancroft's Probate Practice* sec. 334, (2d ed. 1950) ; 1 Restatement (Second) of *Trusts* sec. 6, (1969).

personal representative has a fiduciary duty to disclose to creditors information about filing claims in the decedent's estate merely because she corresponds with them. We hold that the mere fact that there was correspondence between the personal representative and the creditors about their accounts payable did not give rise to a fiduciary duty on the part of the personal representative to disclose information about filing claims. As stated above, to hold otherwise would deter communication between the estate and the creditors. It is to their benefit that the creditors get actual personal notice of the death of the debtor.

We must next inquire as to whether the statement in the attorney's letter that "it is our intention to pay the delinquent account as soon as money becomes available," was a partial or ambiguous statement which could be read as a promise to pay such account when funds became available regardless of any defenses the personal representative may have against the creditor's claim. Such a reading would be false and would have required the personal representative to disclose to the creditors information about filing claims so as to prevent the communication from being misleading. 3 Restatement (Second) of *Torts,* sec. 551 (2) (b) (1977).

While the circuit court found that the letter was misleading absent disclosure of information for filing claims, we conclude as a matter of law that the letter was not a partial or ambiguous statement requiring disclosure of information concerning filing of claims to prevent the letter from being misleading.

Neither Mrs. Lecic as personal representative nor her attorney initiated the correspondence. Lane sent a mailgram demanding payment. Lane had already been notified of Mr. Lecic's death. It had ample time to protect its claim. Lane's mailgram could be considered an at-

tempt, albeit inadequate, to protect its claim. In reply to Lane's communications, both before and after the deadline for filing claims, the attorney acknowledged the estate's present intent to pay the accounts payable when funds became available. These communications between the personal representative and the creditor cannot be viewed as lengthy negotiations between the parties to settle the debt, suggesting to the creditor that it need not file its claim or that it may delay filing its claim. We do not think that the personal representative's statement of her present intention to pay delinquent accounts when funds became available can be read as a waiver of defenses to the claim which the personal representative may have or as relieving the creditor of its duty to take the steps provided by law to protect its claim. Even the least sophisticated creditor would not have understood the statement of present intent to pay as meaning that it need do nothing to protect itself. Lane, a sophisticated creditor with experience in collecting bad debts, could not reasonably interpret the letter as an unconditional promise to pay. Indeed the very words of the letter stated one condition—the personal representative intended to pay as soon as money became available. This condition was warning enough that there was a likelihood that money might not be available and that Lane's claim would have to be processed along with other claims against the business or against the estate. We conclude as a matter of law that the attorney's letter of July 28, 1978, was not partial or incomplete in the sense that the letter had several reasonable meanings, one of which was false.

For the reasons we have set forth, we hold that no duty arose on the part of Mrs. Lecic, either as special administrator or as the personal representative to disclose the information concerning the filing of claims

either from the act of corresponding with the creditors or from the particular words used in the correspondence in the instant case. To hold otherwise would deter communication between the estate and the creditors. It is to the creditors' benefit that they get actual notice of the death of the debtor. Furthermore, if we were to impose a duty to disclose under the facts of this case, we would not be giving full effect to sec. 859.07, Stats. 1979–80, requiring notice to creditors by publication only. Our imposing a duty to disclose under the facts of this case would also defeat the policy behind our non-claim statute which is to promote the speedy administration of estates in the interest of creditors, heirs and devisees, and in the interest of rendering certain the titles to real estate. *Estate of Lathers, supra,* 215 Wis. at 154; *Estate of Palmer,* 68 Wis. 2d 101, 108, 227 N.W.2d 680 (1975).

We conclude as a matter of law that under the facts of this case Mrs. Lecic had no duty in her capacity as special administrator or personal representative to disclose to Lane or Schweiger the deadline for and necessity of filing claims, and that her failure to disclose did not constitute misrepresentation by nondisclosure. Accordingly, we reverse the decision of the court of appeals; we reverse the orders of the circuit court; and we remand this cause to the circuit court for proceedings not inconsistent with this opinion.

*By the Court.*—Decision of the court of appeals reversed; orders of the circuit court reversed; cause remanded to the circuit court for proceedings consistent with this opinion.